COPY of
Original Filed
on this date

COPY

FEB 2 5 1999

Clerk
District Court
For The Northern Mariana Islands

UNITED STATES DISTRICT COURT FOR
THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIV No CV 99-0017 |
| Plaintiff, | ORDER GRANTING PARTIES' |
| v. | REQUEST TO ENTER THE CONSENT DECREE |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, GOVERNOR OF THE NORTHERN MARIANA ISLANDS, COMMISSIONER OF THE DEPARTMENT OF PUBLIC SAFETY, SECRETARY OF THE DEPARTMENT OF LABOR AND IMMIGRATION, SECRETARY OF THE DEPARTMENT OF COMMUNITY AND CULTURAL AFFAIRS, | |
| Defendants. | |

**ORDER**

Having considered the Consent Decree agreed to by the parties in this matter, and based on the stipulation of the parties in the Consent Decree, the Court hereby finds:

1.    The prospective relief in the Decree is necessary to correct the violations of the federal rights as set forth in the Complaint.

2.    The Decree is narrowly drawn, extends no further than necessary to correct these violations of federal rights, and is the least intrusive means necessary to correct these violations of federal rights.

3.    The Decree will not have an adverse impact on public

1 | safety or the operation of a criminal justice system.

2 |     4. The Decree complies with the requirements of the Prison

3 | Litigation Reform Act, 18 U.S.C. § 3626 et seq.

4 |     Accordingly, it is hereby ORDERED that the Consent Decree be

5 | entered as the judgment of the Court. This order is not an

6 | adjudication on the merits and therefore shall have no preclusive

7 | effect except between the parties to this litigation.

8 |     IT IS SO ORDERED.

9 |     DATED this *25th* day of *Feb.*, 199*9*.

10
11
12
13
14 |                   *Alex R. Munson*

                       ALEX R. MUNSON
15 |                           Judge
16
17
18
19
20
21
22
23
24
25
26
27
28

BILL LANN LEE
Acting Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM
Chief, Special Litigation Section
MELLIE H. NELSON
Deputy Chief, Special Litigation Section
ROBERT MOOSSY
Trial Attorney, Special Litigation Section
U.S. Department of Justice
Civil Rights Division
601 D Street, N.W. #5107
Washington, D.C.  20004
(202) 514-6247

COPY

COPY of
Original Filed
on this date

FEB 2 5 1999

Clerk
District Court
For The Northern Mariana Islands

FREDERICK A. BLACK
United States Attorney
Pacific News Building
238 Archbishop Flores St., Ste. 502 A
Agana, Guam  30901

Attorneys for the United States
  of America

## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, GOVERNOR OF THE NORTHERN MARIANA ISLANDS, COMMISSIONER OF THE DEPARTMENT OF PUBLIC SAFETY, SECRETARY OF THE DEPARTMENT OF LABOR AND IMMIGRATION, SECRETARY OF THE DEPARTMENT OF COMMUNITY AND CULTURAL AFFAIRS,<br><br>                    Defendants. | CIV No. CV 99-0017<br><br>CONSENT DECREE |

### I.  INTRODUCTION

1.    On April 10, 1998, the United States, by and through Acting Assistant Attorney General Bill Lann Lee, gave notice to Governor Pedro P. Tenorio of its intention to investigate

conditions at the corrections and detention institutions of the
Commonwealth of the Northern Mariana Islands ("CNMI") pursuant to
the Civil Rights of Institutionalized Persons Act ("CRIPA"),
42 U.S.C. § 1997 et seq. The United States investigated
conditions at six facilities: the Saipan Prison Complex ("SPC"),
the Saipan Detention Facility ("SDF"), the Kagman Youth Facility
on Saipan ("KYF"), the Saipan Immigration Detention Facility
("SIDF"), the Tinian Detention Facility ("TDF"), and the Rota
Detention Facility ("RDF"). On August 5, 1998, the United States
sent a "Letter of Findings" to Governor Tenorio stating that
conditions at these six facilities violated the constitutional
rights of the persons confined therein.

2.    Defendants in this action are the CNMI, the Governor of
the CNMI in his official capacity; the Commissioner of the
Department of Public Safety in his official capacity as the
official in charge of supervising the operations of SPC, SDF,
RDF, and TDF; the Secretary of the Department of Labor and
Immigration in his official capacity as the official supervising
the operations of SIDF; and the Secretary of the Department of
Community and Cultural Affairs in his official capacity and as
the official supervising the operations of KYF; their successors,
and agents.

3.    This Court has jurisdiction of this action under
28 U.S.C. §§ 1331 and 1345. The United States is authorized to
initiate this action pursuant to 42 U.S.C. § 1997, applicable to
the CNMI through Section 105 of the Covenant to Establish A

Page 2

Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (1978). Venue is proper in the District of the Northern Mariana Islands pursuant to 28 U.S.C. § 1391.

4.    The parties enter into this Decree jointly and for the purpose of avoiding the risks and burdens of litigation.

5.    For purposes of this lawsuit only and in order to settle this matter, the Defendants stipulate that this Decree complies in all respects with the provisions of 18 U.S.C. § 3626(a). The parties further stipulate and agree that the prospective relief in this Decree is narrowly drawn, extends no further than necessary to correct the violations of federal rights set forth in the Complaint, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, the parties agree and represent to the Court that the Decree complies in all respects with the provisions of 18 U.S.C. § 3626(a), and may serve as the factual and legal basis for a court order issued pursuant to those provisions.

6.    The issue of liability has not been litigated. The parties ask the Court to approve this Decree without a full hearing on the merits, on the basis of the United States' Complaint and the above stipulation.

7.    This Decree is not intended to have any preclusive effect except between the parties. Should the issue of the

Page 3

preclusive effect of this Decree be raised in any proceedings other than this civil action, the parties agree to certify that this Decree was intended to have no such preclusive effect.

8.    Defendants, by and through their officials, agents, employees, and successors are enjoined from and shall not deprive persons confined in SPC, SDF, TDF, RDF, KYF, and SIDF of rights, privileges, and immunities secured and protected by the Constitution of the United States.

## II.  PLANNING

9.    Defendants shall develop a short-term and long-term plan for operating SPC, SDF, TDF, and RDF.  This plan shall address operating these facilities as a system, where practicable.  This plan shall correct current deficiencies and address future population growth.  In particular, the plan should address:

    a.   Facility population projections and classification of projected populations;

    b.   Space requirements for housing the projected population in SPC, SDF, TDF, and RDF;

    c.   Programming and services at these facilities appropriate to their populations, including medical care, mental health care, food service, and protection from harm;

    d.   Staffing and staff training;

    e.   Security and emergency planning;

    f.   Funding.

The short-term component of the plan shall be completed within 30 days of the entry of this Decree and updated every six months. The long-term component of this plan shall be completed within a year of entry of this Decree and updated every six months.

10.    Defendants shall obtain the assistance of professional consultants in developing this plan.  Defendants may seek the assistance of the National Institute of Corrections in developing the plan.  Compliance with this planning requirement shall not be dependent or contingent, however, upon obtaining assistance from the National Institute of Corrections.  Defendants may utilize such other professionals to develop this plan as they deem appropriate.

11.    Defendants shall provide the United States with a copy of the final proposed short-term and long-term plan and their revisions upon completion.  The United States shall have the right to review the plans so developed and shall have the authority to disapprove any plan or portion of the plan which it concludes fails to comport with appropriate penological practice.

12.    If Defendants choose to operate RDF and TDF as temporary holding facilities, defined as routinely confining inmates for less than twenty-four (24) hours, absent exigent circumstances, but for no longer than forty-eight (48) hours, then RDF and TDF shall not be required to comply with the following requirements of this Decree:

a.    The portion of Paragraph 19 requiring Defendants to provide metal storage lockers;

b.   Paragraph 45 which requires Defendants to provide hot water in bathrooms;

c.   Paragraph 50 regarding health screening, testing, and examinations;

d.   Paragraph 53 requiring the facilities to be staffed by full-time correctional officers;

e.   Paragraph 54 requiring training for correctional officers.

f.   Paragraph 56 requiring classification of inmates;

g.   Paragraph 60 requiring special needs, protective custody, and disciplinary/maximum security housing areas;

h.   Paragraph 61 requiring a secure perimeter fence; and

i.   Paragraph 63 requiring control of tools and utensils.

### III.  FIRE SAFETY

13.   Defendants shall protect persons confined in SPC, SDF, TDF, RDF, KYF, and SIDF from undue risk of harm from fire and smoke.

14.   Within 180 days of entry of this Decree, Defendants shall provide a complete and working fire alarm system with system type smoke detectors in SPC, SDF, TDF, RDF, KYF, and SIDF. Such fire alarm and smoke detection system shall be continuously monitored by staff through a central control panel at each facility and shall directly alert the fire department. Defendants shall test the alarm and smoke detection system monthly, and service or repair as necessary.

15.   Defendants shall remove all polyurethane foam

mattresses, pillows, furniture, and other foam materials, such as insulation, from SPC, SDF, TDF, RDF, KYF, and SIDF. Defendants agree to utilize only fire resistant and/or retardant mattresses, pillows, bedding, furniture, insulation, and other materials.

16.    SPC, SDF, TDF, RDF, KYF, and SIDF shall each have a back-up generator for use during power-outages. Each generator shall comply with the National Fire Protection Association Code and be capable of powering all alarms, lights, and other fire-safety and emergency equipment. Defendants shall test and service such generators weekly, including servicing the battery charger, regular oil changes, live load tests, and in-use tests.

17. Defendants shall complete a comprehensive survey of all substandard and hazardous electrical conditions and correct such conditions at SPC, SDF, TDF, RDF, KYF, and SIDF. Afterwards, the CNMI Fire Division or other qualified agency shall conduct an inspection of these facilities to identify electrical fire and shock hazards, and the defendants shall correct any hazards.

18. Defendants shall install emergency lighting and exit signs at SPC, SDF, TDF, RDF, KYF, and SIDF.

19. Within 180 days from entry of this Decree, Defendants shall provide approved metal waste receptacles and metal containers to store personal combustible items for staff and persons confined at SPC, SDF, TDF, RDF, KYF, and SIDF. The storage containers for personal items that inmates are permitted to keep in their cells shall be located in their sleeping areas and provide inmates with easy access to their personal

Page 7

belongings. Defendants shall also remove all unnecessary combustible items and materials from housing units, storage areas, and common areas.

20.  Within 180 days from entry of this Decree, Defendants shall provide SPC, SDF, TDF, RDF, KYF, and SIDF, or units of such facilities, each with local common key locks for all cell, ingress/egress, and other locking doors along the path of ingress/egress. Each such facility, or unit of a facility, shall utilize local common keys in a manner that permits speedy evacuation of the facility while ensuring security. Such keys shall be identifiable by sight and touch. All ingress/egress doors shall be able to be unlocked from both sides. No cell doors, ingress/egress doors, or other locking door obstructing the path of ingress/egress shall be secured with any lock other than the common-key lock.

21.  Defendants shall ensure that a set of emergency keys that function appropriately on all exit doors is kept readily accessible to staff on all shifts at SPC, SDF, TDF, RDF, KYF, and SIDF. All corrections staff must be educated with respect to the location of emergency keys within their facility.

22.  Within 180 days of entry of this Decree, Defendants shall install at SPC and SIDF a complete automatic sprinkler system with quick response heads throughout the facility, including storage and staff areas, except where such sprinklers are unfeasible due to conditions such as high temperatures in equipment rooms.

23.  Defendants shall provide at SPC, SDF, TDF, RDF, KYF, and SIDF a fire or smoke emergency evacuation safe refuge area at least fifty feet from the facility that is directly accessible to evacuating persons.  Such refuge area shall provide sufficient space to safely hold evacuees.

24.  Within 180 days from entry of this Decree, Defendants shall cease housing persons in the wood-frame structure at SPC designated the "half-way house."  No person shall be housed in wood-frame buildings.  As an interim measure until inmates are no longer housed in this wood-frame building, Defendants shall immediately ensure that no cooking or smoking takes place in the building, that inmates' personal items are kept at a minimum and are stored in metal lockers, the building has sufficient single-station fire alarms and smoke detectors, and that the building is continuously supervised by a staff-member inside the building with two-way communication to a central command center capable of calling the fire department.

25.  Defendants shall develop a comprehensive and ongoing fire-safety and other emergency training program for SPC, SDF, TDF, RDF, KYF, and SIDF.  Such training shall consist of emergency procedures, use of fire protection and other emergency equipment, and evacuation of inmates and staff, under actual fire or other emergency conditions.  Such training shall be conducted at least annually and for all newly hired persons.  In addition, defendants shall conduct regular fire and other emergency drills at each facility in which staff use emergency equipment and

procedures to evacuate the facilities and respond to a fire or other emergency.

26.  Within 180 days from entry of this Decree, Defendants shall provide SPC/SDF and SIDF with necessary fire evacuation equipment to include two emergency breathing apparatus for each facility and sufficient fire extinguishers.  Defendants shall provide RDF, TDF, and KYF with necessary fire evacuation equipment to include one emergency breathing apparatus for each facility and sufficient fire extinguishers.  RDF and TDF may use the emergency breathing apparatus located at their respective fire departments.

27.  Defendants shall establish and document at SPC, SDF, TDF, RDF, KYF, and SIDF a fire safety and emergency equipment maintenance and inspection program to evaluate on a regular basis each facility for fire safety, and test, service, and maintain all fire safety equipment.

28.  Defendants shall designate at SPC, SDF, TDF, RDF, KYF, and SIDF a fire safety and emergency coordinator for each facility who shall be responsible for each facility's fire safety and other emergency training, equipment, and other programs.

29.  Defendants must at all times staff SPC, SDF, TDF, RDF, KYF, and SIDF with at least one staff-person per housing unit directly responsible for and capable of detecting and responding to a fire or other emergency and evacuating persons confined in these facilities.

30.  Defendants shall install a second outside exit at SIDF

that can be used to evacuate persons during a fire or other
emergency.

## IV.    SANITATION

### A.    Food Service

31.    Defendants shall provide persons confined in SPC, SDF,
TDF, RDF, KYF, and SIDF with food prepared under sanitary
conditions.



32.    Defendants shall ensure that all personnel supplying or
handling food served at SPC, SDF, TDF, RDF, KYF, and SIDF receive
training in the basic principles of food protection and food
hygiene by the local public health authority or other competent
source.    Defendants shall maintain records of this training,
attested to by the training authority.

33.    Defendants shall provide SPC, SDF, TDF, RDF, KYF, and
SIDF with food warmers and insulated containers to ensure that
hot foods are transported and/or stored before and through their
service to inmates at or over 140 degrees Fahrenheit and cold
foods are kept sufficiently cold to prevent the growth of
dangerous bacteria.



34.    Defendants shall ensure that all utensils used to make
or distribute any food served at SPC, SDF, TDF, RDF, KYF, and
SIDF are clean and sanitized either through chemical sanitization
in a three compartment sink or through steaming the surface of
utensils to at least 160 degrees Fahrenheit.

35.    Defendants shall ensure all food for consumption at
SPC, SDF, TDF, RDF, KYF, and SIDF is stored in a manner to

prevent the growth of dangerous bacteria or other dangerous contaminants. Frozen foods shall be stored at or below 0 degrees Fahrenheit. Refrigerated foods shall be stored at or below 45 degrees Fahrenheit.

36. Defendants shall provide hot water not to exceed 120 degrees Fahrenheit but above 110 degrees Fahrenheit in the food preparation and service areas at SPC, SDF, TDF, RDF, KYF, and SIDF, and at any contractor providing food to these facilities, for personal hygiene and cleaning food service utensils.

37. Defendants shall develop a pest control plan and ensure SPC, SDF, TDF, RDF, KYF, and SIDF are free from pests and vermin. Within 180 days from entry of this Decree, all windows that can be opened shall have screens.

38. Defendants shall supply special diets where medically indicated to persons confined in SPC, SDF, TDF, RDF, KYF, and SIDF. The formulation of these special diets must be approved by a qualified dietician.

39. Defendants shall establish and document a regular food service equipment and utensil preventive maintenance program to ensure that equipment is functioning properly and that utensils are clean and sanitary. This program shall include regular testing of food utensil sanitization, including utensils used by contractors, and food temperatures at all points in the food storage and preparation process.

B.  Hygiene and Sanitation

40. Defendants shall provide persons confined in SPC, SDF,

TDF, RDF, KYF, and SIDF with sanitary conditions of confinement.

41.  Defendants shall establish and implement written policies and procedures for routine daily housekeeping for all areas of SPC, SDF, TDF, RDF, KYF, and SIDF.

42.  Defendants shall ensure that the local public health authority shall conduct health inspections of all areas of SPC, SDF, TDF, RDF, KYF, and SIDF.  Defendants shall implement the public health authority's recommendations within 15 days of receiving them.

43.  Within 180 days from entry of this Decree, Defendants shall provide at least twenty (20) foot-candles of artificial lighting, measurable thirty-six inches from the floor upward, in all cells and common areas of SPC, SDF, TDF, RDF, KYF, and SIDF. All lighting fixtures should be enclosed in fixtures appropriate for use in a secure or correctional setting and free from electrical hazards and unsecured wiring.

44.  Within 180 days from entry of this Decree, Defendants shall provide at least fifteen (15) cubic feet per minute per inmate of fresh forced air via mechanical ventilation with supply and exhaust, temperature controlled or otherwise, for all SPC, SDF, TDF, RDF, KYF, and SIDF cells and common areas.

45.  Defendants shall provide hot water in all bathrooms at SPC, SDF, TDF, RDF, KYF, and SIDF for personal hygiene and cleaning of the facility.

46.  Defendants shall provide adequate toilet facilities, including one shower for every twelve inmates, and regular access

to toilets at SPC, SDF, TDF, RDF, KYF, and SID.  Defendants shall
survey each facility for plumbing deficiencies and repair toilets
and urinals on a priority basis.  Defendants shall ensure that
all toilets flush properly, the septic systems are maintained in
good working order, bathrooms have working sinks, and showers are
free from mold and mildew.  Defendants shall comply with this
paragraph within 90 days except that Defendants shall have 180
days to comply at SPC with the requirement that Defendants
provide one shower for every twelve inmates and flushing toilets.

47.  Defendants shall remove all hazardous chemicals from
cells and common areas of SPC, SDF, TDF, RDF, KYF, and SIDF.

48.  Defendants shall provide each inmate with an
appropriate place to sleep at SPC, SDF, TDF, RDF, KYF, and SIDF
regardless of crowding.  Defendants shall provide each inmate
adequate bedding and a clean sleeping surface at least twelve
inches off the floor.  Defendants shall remove all cloth mattress
covers and provide all inmates at SPC, SDF, TDF, RDF, KYF, and
SIDF with fire, soil, and moisture resistant mattress covers that
may be sanitized.

## V.  MEDICAL CARE

49.  Defendants shall provide a complete health screening to
all persons confined at SPC, SDF, TDF, RDF, KYF, and SIDF as
follows:

a.  Upon admittance Defendants shall administer a
health screening questionnaire designed to determine whether the
inmate has a communicable disease, is in need of medical

attention, has special medical needs, is taking prescription medication, is mentally ill, or presents a suicide risk.  The screening shall be administered by trained staff and kept with the inmate's record.

b.  All inmates confined for seven or more days shall be administered a PPD tuberculosis test within the seven days. Regardless of length of confinement, any person demonstrating symptoms of active tuberculosis or testing positive for tuberculosis shall be administered a chest x-ray within 3 days. All persons with active tuberculosis shall be segregated immediately from the rest of the population in a manner to minimize the risk of tuberculosis transmission and provided appropriate medical care.

c.  All inmates at SPC, SDF, RDF, TDF, and KYF confined for fourteen days or longer, or persons confined at SIDF for 21 days or longer, shall be given a physical health assessment by a physician or physician assistant.  The assessment shall include a medical history, and a vital signs examination.  The results of the assessment shall be recorded and kept in the inmate's medical record along with the inmate's medical intake screening form.

50.  Defendants shall administer medication at SPC, SDF, TDF, RDF, KYF, and SIDF only by a nurse or other individual trained in dispensing medications and recognizing and responding to possible side effects of taking medications.

51.  Within 180 days from entry of this Decree, Defendants shall train all staff in preventing the spread of communicable

diseases and blood-borne pathogens, including TB and HIV.

## VI.   SECURITY AND PROTECTION FROM HARM

52.  Defendants shall staff SPC, SDF, TDF, and RDF with an adequate number of full-time correctional officers.  Staff at SPC, SDF, TDF, RDF, KYF, and SIDF shall be of sufficient number to supervise inmates in the event of an emergency or routine absences, and, at RDF and TDF, when detainees are escorted to the lavatories.

53.  Defendants shall train corrections officers, supervisors, and other staff responsible for caring for inmates at SPC, SDF, TDF, RDF, and SIDF in professional corrections practices.  All newly hired correctional officers and supervisors shall successfully complete sixty (60) hours of pre-service training before working in the institution, and eighty (80) hours of on the job training supervised by an experienced correctional officer.  Defendants shall provide in-service training of a minimum of forty (40) hours per year for all correctional officers after their first year of employment.  Training shall include, but is not limited to, certification for CPR, fire safety, inmate mental health, security practices, suicide prevention, and other appropriate curriculum.

54.  Within 180 days of entry of this Decree, Defendants shall develop comprehensive facility policies and procedures for SPC, SDF, TDF, RDF, KYF, and SIDF.  Such policies and procedures shall include policies regarding supervising inmates of different classifications.  Defendants shall regularly review and revise

Page 16

these policies and procedures as necessary.  The United States
shall be provided a copy of the final proposed policies and
procedures upon their completion.  The United States shall have
the right to review policies and procedures so developed and, if
the United States disagrees with any policy or procedure, shall
inform and consult with Defendants to improve the policy or
procedure.  If the parties are unable to agree on whether a
particular policy is appropriate, the matter shall be decided by
the Court after briefing by the parties.  Defendants shall obtain
the assistance of professional consultants in developing these
policies and procedures, and may seek the assistance of the
National Institute of Corrections.  Compliance with the
requirements of this paragraph shall not be dependent or
contingent, however, upon obtaining assistance from the National
Institute of Corrections.  Defendants may utilize such other
professionals to develop these policies and procedures as they
deem appropriate.

55.  Defendants shall develop and implement at SPC, SDF,
TDF, RDF, KYF, and SIDF an inmate classification plan utilizing
objective and behaviorally based classification standards
including nature of offense, criminal history, risk of being a
predator/prey, and mental health status (e.g., suicide risk).
The classification system shall be based upon safety and security
considerations unique to the population at each facility.
Defendants shall obtain the assistance of professional
consultants in developing the inmate classification system, and

may seek the assistance of the National Institute of Corrections
in developing a classification system.  Compliance with the
requirements of this paragraph shall not be dependent or
contingent, however, upon obtaining assistance from the National
Institute of Corrections.  Defendants may utilize such other
professionals to develop the inmate classification plan as they
deem appropriate.

56.  Defendants shall provide regular sight and sound direct
supervision of all persons confined at SPC, SDF, TDF, RDF, KYF,
and SIDF.  Defendants shall remove sight-line obstructions such
as hanging sheets and towels.

57.  Defendants shall provide correctional officers, and
other staff supervising inmates at SPC, SDF, TDF, RDF, KYF, and
SIDF with the ability to communicate, at all times while
supervising or monitoring inmates, with a central command post at
each facility.

58.  Defendants shall ensure that correctional officers at
SPC, SDF, TDF, RDF, KYF, and SIDF make frequent rounds to monitor
activity in inmate housing areas.  Appropriate documentation of
security checks shall be maintained in a manner that is readily
identifiable and verifiable.  Sufficient officer rounds shall be
made within the housing units to provide inmates reasonable
protection from harm.  At minimum, in maximum and medium security
housing areas such rounds shall be made and recorded on at least
fifteen (15) minute intervals.

59.  Defendants shall provide special needs (e.g., suicide-

watch), protective custody, and disciplinary/maximum security housing areas at SPC, SDF, TDF, RDF, KYF, and SIDF for inmates who must be separated from the general population and/or in need of frequent or constant supervision. Suicide-watch cells must be free from "hanging points." Staff shall monitor potentially suicidal inmates at least every fifteen (15) minutes and record such monitoring. Staff shall continuously monitor suicidal inmates.

60. Within 180 days from entry of this Decree, Defendants shall install a secure perimeter fence around SPC, SDF, TDF, KYF, RDF, and SIDF, appropriate to the inmate classification and population at each facility. Each fence shall have adequate lighting and be monitored.

61. Defendants shall ensure that males and females at KYF do not commingle unless directly supervised by staff.

62. Defendants shall control and account for the location of all tools, utensils, and personal effects that could be used as a weapon. Defendants shall secure all areas in which metal objects are stored or disposed. Defendants shall install "shadow boards" in tool storage and kitchen utensil areas and daily account for and document all tools and utensils accessible to inmates. Inmates shall not have access to any area in which metal objects are stored or held for removal as trash, unless directly and constantly supervised by staff. Correctional officers shall search inmates and housing areas for contraband articles.

## VII.  NEW CONSTRUCTION

63.  Any new facility(ies) built or operated by Defendants, or their agents or contractors, to detain or confine inmates shall comply with the provisions of this Decree.

64.  Any new facility(ies) built or operated by Defendants, or their agents or contractors, to detain or confine inmates shall be designed by an architect with experience in designing correctional facilities.  Defendants shall provide the United States with the architectural plans for such facility(ies) for the United States's review and comments.

65.  Defendants have provided the United States with the following schedule termed "Planning Schedule for New Facilities": December 1998, Defendants shall have hired an expert consultant as a project manager for the new facility construction project; September 1999, Defendants shall award the architectural and engineering contract for the new facility; May 2000, Defendants shall begin construction of the new facility.  If Defendants follow this schedule and progress at a reasonable pace in constructing the new facility(ies), Defendants need not comply with the following provisions of this Decree for the current facilities, provided that the current facilities are not used to detain or confine inmates upon the opening of the new facility(ies):

a.    Paragraph 14 in that it requires the fire alarm and smoke detection system to operate as an integrated system

Page 20

alerting a central control panel and directly notifying the fire department. Defendants may instead use single unit battery operated alarms and smoke detectors provided such units are tested and serviced weekly. In addition, each unit shall be continuously supervised by staff with two-way communication to a central control that can immediately respond to the emergency, including immediately contacting the fire department.

b.    Paragraph 22 regarding installation of fire sprinklers;

c.    Paragraph 45 as it applies to hot water in the lavatories at SPC and SDF.

### VIII.  COMPLIANCE

66.    Ninety (90) days following entry of this Decree and every six (6) months thereafter until this Decree is terminated, the CNMI shall file with the Court, with a copy to the United States, a status report delineating all steps taken during the reporting period to comply with each provision of this Decree. The CNMI shall state whether any internal or external audits of the functions of SPC, SDF, TDF, RDF, KYF, and SIDF have been performed and will summarize the subject matter and results of such reports. The CNMI shall provide the United States with copies of these reports or audits upon request.

67.    The Defendants shall maintain all records necessary to document their compliance with all terms of this Decree. The Defendants shall also maintain any and all records required by or developed under this Consent Decree.

68.    Defendants shall appoint a Consent Decree coordinator

Page 21

to oversee compliance with this Decree, and to serve as a point of contact.

69.   During all times while the Court maintains jurisdiction over this action, the United States shall have access to, and receive copies of, any documents and any databases necessary to evaluate compliance with this Decree.  The United States shall have access to all staff and facilities as necessary to evaluate the Defendants' compliance with the terms of this Decree.

70.   The Defendants shall immediately provide copies of, and explain the terms of this Decree to all current and future employees or other staff of SPC, SDF, TDF, RDF, KYF, and SIDF, in order to ensure that they understand the requirements of this Decree and the necessity for its strict compliance.  All such individuals shall sign a statement indicating that they have read and understand this Decree and acknowledge receiving an individual copy of the Decree.

71.   Except where otherwise specifically indicated, the Defendants shall implement all provisions of this Decree within 90 days after entry of this Decree.

72.   The Court shall retain jurisdiction of this action for all purposes during the term of this Decree.  At any time after two (2) years from the date of entry of this Decree, and after substantial compliance has been maintained for no less than one year, the CNMI may move to terminate this Decree.  Any motion to terminate must detail all aspects of the Defendants' compliance with each provision of this Decree, supported by affidavits and

Page 22

supporting documentation.  The United States shall have ninety (90) days from receipt of the CNMI's motion to terminate to file its objection(s).  In the event the United States objects to termination of the Decree, the Court shall hold a hearing, at which both parties may present evidence, before ruling on the motion to terminate.  At the hearing, the burden shall be on the CNMI to demonstrate that it has fully and faithfully implemented all provisions of this Consent Decree and maintained substantial compliance for at least one year.

VII.   SEVERABILITY

73.   The parties agree to defend the provisions of this Consent Decree.  The parties shall notify each other of any court challenge to this Decree.  In the event any provision of this Consent Decree is challenged in any local or state court, removal to a federal court shall be sought.

74. In the event any provision of this Consent Decree is declared invalid for any reason by a Court of competent jurisdiction, said finding shall not affect the remaining provisions of this Decree.

//
//
//
//
//
//
//

We consent and seek entry of this Decree:

For the United States of America:


FREDERICK BLACK
United States Attorney
District of Guam and the
Northern Mariana Islands


GREGORY BAKA
Assistant United States
    Attorney
District of the Northern
    Mariana Islands


BILL LANN LEE
Acting Assistant Attorney
  General
Civil Rights Division


STEVEN H. ROSENBAUM
Chief
Special Litigation Section


MELLIE H. NELSON
Deputy Chief
Special Litigation Section


ROBERT J. MOOSSY, JR.
TX ID 791296
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
P.O. Box 66400
Washington, D.C. 20035-6400
(202) 514-6247

For the Defendants:

PEDRO P. TENORIO
Governor of the Northern Mariana Islands

CHARLES W. INGRAM, JR.
Commissioner of the Department of Public Safety

MARK ZACHARES
Secretary of the Department of Labor and Immigration

THOMAS TEBUTEB
Secretary of the Department of Community and Cultural Affairs

MICHAEL XXAMBROSE
Assistant Attorney General
   (Acting)
Maya B. Kara

SO ORDERED this 25th day of February 1999.

HON. ALEX R. MUNSON
United States District Court Judge
of the Northern Mariana Islands

Page 25