

COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS

DEPARTMENT OF CORRECTIONS

Vicente Taman Seman Building
P.O. Box 506506, Saipan, MP 96950
Telephone: (670) 664-9061 Facsimile: (670) 664-9515



| Part | Section | Subject | Policy No. | Review Date |
|---|---|---|---|---|
| Administration and Management | General Administration | Professional Standards Unit (PSU) | 1.1.9 | |
| **ACA Standards** | 3 ALDF-1A-14 Standard Operating Procedures | | | |
| **Consent Decree** | Paragraph 54 Develop Facility Policies and Procedures | | | |

## I.    PURPOSE

To establish the Professional Standards Unit Policy and Procedures, to provide guidelines for the investigation and disposition of complaints and/or allegations of misconduct that involves members of the Department of Corrections.

## II.    POLICY

The community expects excellent performance from the Department of Corrections and its individual members. Citizens must have a method to voice their displeasure and have confidence that misconduct allegations will receive a complete and impartial investigation. Essential to the maintenance of public confidence in the department is its ability to establish and maintain standards of conduct and behavior for its employees. It is this Department's responsibility to discipline employees when conduct and/or job performance (1) brings discredit to the Department, (2) is inconsistent with the Department's goals, or (3) is contrary to law and/or departmental rules, regulations, or procedures.

It is the policy of the Department to accept impartially all complaints involving the acts or failure to act of Department members from any citizen or Department employee. Department members are required to cooperate fully and courteously with any person making a complaint against the Department.

The Department will investigate and promptly adjudicate all complaints related to internal discipline of its members in a manner that will assure the community of prompt corrective action when Department members conduct themselves improperly and to protect the Department and its members from unwarranted criticism pursuant to the discharge of official duties and against malicious or false allegations.

III.    DEFINITIONS

Admonishment:  Is an informal disciplinary measure.  A supervisor may discuss at any time minor deficiencies in performance or conduct with the objective of improving an employee's effectiveness.  Admonishment shall not be made a matter of record.

**Anonymous complaints:**  Complaints from citizens who expressly request their names to be held in confidence.

**Commission:**  The Civil Service Commission.

**Complaint:**  A verbal or written accusation or charge brought against an employee by anyone including the public, fellow officers or a supervisor. The complaint can be considered formal or informal based on severity.

**Exonerated:**  The investigation revealed that the act, which provided the basis for the complaint, did occur, but that it was justified, legal, proper, and that no misconduct was involved.

**Formal Investigation:** The process of investigation ordered by the Commissioner of Corrections during which the questioning of an employee is intended to gather evidence of misconduct, which may be the basis for seeking his or her letter of reprimand, demotion, discharge or suspension.

**Informal Inquiry:** A meeting by supervisory or command personnel with an employee upon whom an allegation of misconduct has come to the attention of such supervisory or command personnel, the purpose of the meeting is to mediate a citizen complaint or discuss the facts to determine whether a formal investigation should be commenced. In lieu of a meeting, a "To/From Memo" explaining the employee's actions or the circumstances involved may be requested. Misconduct sustained by an informal inquiry will be handled as a matter of routine discipline and in accordance with the procedures outlined in this policy and procedure.

**Insufficient Evidence:** There is insufficient proof to confirm or deny the allegation.

**Interview:** The questioning of an employee pursuant to the formal investigation procedures in connection with an alleged violation of rules, which may be the basis for seeking his/her, suspension, demotion or discharge. The term does not include questioning as part of an informal inquiry or relating to minor infractions of agency rules, which may be noted on the employee's record but which may not in themselves result in discharge, demotion or suspension in excess of three days.

Investigative Report:  A final report prepared by the investigator of PSU or supervisor. The report will include a summary of the allegation/s; a summary of the investigation, including summaries of witness's statements, statements of the suspect employee and

factual observations of the investigators; and all evidentiary materials gathered during the investigation.

**Not Sustained:** The investigation failed to disclose sufficient evidence to clearly prove or disprove the allegation or the complainant failed to cooperate with the investigation and it was closed.

**Proper Conduct:** The allegation is true, but the action of the Department or the employee is consistent with Department policy.

**Sustained:** The investigation disclosed sufficient evidence to prove that the incident did occur and that the individual named in the complaint was responsible and was culpable.

**Sustained Other:** The sustaining of an allegation other than the allegation contained in the original complaint. For example, a violation not contained in the original complaint.

**Unfounded:** The investigation conclusively proved that the incident did not occur, or that the employee named in the complaint was not involved.

**Unfounded Complaint:** Either the allegation is demonstrably false or there is no credible evidence to support it.

**Written Reprimand:** Is a written statement indicating that the employee's conduct or performance is unacceptable and must be improved, or further action will be taken. A reprimand is not Adverse Action and is not appealable unless the employee feels that the reprimand is not justified. A copy of the reprimand becomes a part of the employee's Official Personnel Folder.

## IV.    PROCEDURES

### A.    Authority

A duly appointed Commissioner of Corrections is charged with the responsibility of managing the Department of Corrections in accordance with CNMI laws. Accordingly, the Commissioner of Corrections has the authority to maintain discipline on its members in accordance with the fundamental principles of fairness and that Department members are afforded all their rights.

### B.    Professional Standards Unit (PSU)

The Professional Standards Unit is hereby established. The Commissioner of Corrections may designate a PSU supervisor and officers of the department as he sees fit in order for the unit to function in accordance with this policy and procedures. Due to the sensitivity and impact that may result on the department on internal matters, the PSU supervisor and officers assigned to this unit will serve at the pleasure of the Commissioner of Corrections and will be responsible

to the Commissioner of Corrections. The Commissioner of Corrections may request an outside agency to do an internal investigation as he sees fit.

C.    Mission of the Professional Standards Unit

The mission of the PSU is to investigate and review all complaints made by citizens, inmates/detainees and/or department employees, allegations of misconduct by department employees in an impartial, fair and in accordance with the DOC policy and procedures so public confidence will be maintained.

D.    **Objectives**

The primary objectives of PSU investigations are:

1.  Protection of the Public. The public has a right to expect efficient, fair, and impartial treatment from every department member. Therefore, to assure the maintenance of these qualities, any misconduct by department personnel must be detected, thoroughly investigated and properly adjudicated.

2.  Protection of the Department. The department is often evaluated and judged by the conduct of individual members. It is imperative that the entire organization not be subjected to public censure because of misconduct by one of its members.

3.  Protection of the Employee. Employees must be protected against false allegations of misconduct. This can only be accomplished through a consistently thorough investigative process.

4.  Correction of Procedural Problems. The department is constantly seeking to improve the effectiveness and efficiency of itself and its personnel. Internal investigations occasionally disclose faulty policies, procedures and guidelines that would otherwise have gone undetected. These procedures can then be improved or corrected.

E.    **Selection of Personnel for the Professional Standards Unit**

1.  Personnel assigned to the PSU should be energetic, resourceful, display a high degree of perseverance and initiative, the ability to withstand the rigors and tensions associated with complex investigation, social pressures and long hours of work. The PSU personnel must be of unquestioned integrity and possess the moral stamina to perform unpopular tasks. The PSU personnel must maintain an appropriate balance between professional commitment, personal and group loyalties. The PSU personnel must possess the ability to be tactful when dealing with members of the Department, inmates/detainees and the community. Personnel who may present a conflict of interest shall not be assigned to the PSU.

2. The PSU personnel will be appointed by the Commissioner of Corrections and will be under the direct command of the Commissioner of Corrections. The appointed personnel will be from the shift roster and the assignment is temporary assignment when PSU investigation is necessary. The Commissioner of Corrections will determine the number of personnel needed for the investigation. One of the appointed personnel will be designated as the PSU supervisor.

3. The investigating person(s) are under the direct command of the Commissioner of Corrections and does not require that the investigating officer is of a higher rank than the officer being investigated.

**F.    Professional Standards Unit Personnel Training**

The PSU personnel should be trained in the elements of criminal law, court procedures, rules of evidence, report writing, surveillance techniques, criminal investigation, the use of technical equipment, DOC policies and procedures and the Personnel Service System Rules and Regulations (PSSR&R) relating to the disciplinary process. All PSU personnel and any other officer/employee who may be called upon to conduct professional standards investigation must be thoroughly familiar with the PSU Policy and Procedures. All PSU personnel should receive basic training when initially assigned and on an ongoing basis.

**G.    Professional Standards Unit Resources**

The PSU should be provided with the resources such as equipment, office space, computers, office supplies, filing cabinets, desks and chairs, and vehicles to effectively and efficiently carry out its mission. Other resources such as reference books and materials should be made available and if necessary updated as required.

**H.    Duties and Responsibilities of the Professional Standards Unit**

1. The PSU is responsible for the investigation and review of all allegations of misconduct, by employees of the Department of Corrections, including anonymous complaint.

   a.  Misconduct is defined as:

   ◦  Commission of a crime or an offense;
   ◦  Violation of departmental rules and regulations; or,
   ◦  Conduct, which adversely reflects upon the employee or the Department.

   b.  The PSU shall be responsible for any investigation as directed by the Commissioner of Corrections.

c. The PSU may refer investigations to the employee's supervisor or Operations Captain for minor departmental rules and regulations violations.

d. The PSU officers shall have the authority to interview any employee of the department and to review any record or report of the department relative to their assignment. Request from PSU officers, in furtherance of their duties and responsibilities, shall be given full cooperation and compliance as though the requests came directly from the Commissioner of Corrections or his designee.

e. The PSU shall maintain a comprehensive record system on all complaints received against the department or employees whether investigated by PSU or assigned to the employee's supervisor for investigation and disposition. PSU shall protect the confidentiality of the records by maintaining them in a secure area with access limited to authorized personnel only. The records shall be maintained separately from personnel records or centralized records systems.

f. The PSU shall prepare and submit to the Commissioner of Corrections quarterly reports that summarize the nature and disposition of all misconduct complaints received by the Department.

g. An annual report summarizing the types of complaints received and the dispositions of the complaints should be made available to the public and to department employees. The names of complainants and employees shall not be published in this report.

h. To identify training needs based on the results of the investigation of a complaint.

i. To make recommendations in amending existing departmental policies and procedures and the development of new policies and procedures.

j. PSU and/or other officers conducting investigation of any allegation of misconduct must strive to conduct a thorough and objective investigation without violating the rights of the employee, and should show proper respect to all members of the public.

k. If it is discovered that other misconduct not alleged might have occurred during the investigation of the initial allegation, this too will be investigated, reported upon, and adjudicated.

I.    Accepting Reports Alleging Employee Misconduct

All department personnel are directed to accept reports of employee misconduct from all persons who wish to file a complaint regardless of the time or day. Citizens will be encouraged to submit their complaint in person as soon as possible after the incident. If the complainant cannot file the report in person, a representative of the PSU shall visit the individual at his or her residence, place of business or at another location in order to complete the report. If PSU representative is not available, the Shift Commander or supervisor is to accept the complaint. An employee who is not a PSU investigator and/or supervisor receiving a complaint should refer the complaint to the supervisor or to a PSU supervisor or investigator. If the PSU representative and the supervisor are not available, any member of the department shall accept the complaint.

**J.    Employee Receiving the Complaint**

The employee receiving the complaint will:

1.  Provide the person making the complaint a copy of PSU Citizen Complaint Information, which explains the PSU complaint procedures. The PSU will make every effort to provide the Citizen Complaint Information to individuals who made complaints through telephone, mail, facsimile and other means where feasible.

2.  Advise the complainant that he or she will be kept informed of the status of the complaint and its ultimate disposition.

3.  Complete the Professional Standards Report Form and request the complainant to sign the form. If the complainant refuses to sign the form, the employee receiving the complaint will note it on the form that the complainant refuses to sign the form. The complainant will be informed that failure to sign the form will not preclude the investigation of the allegations.

4.  All department personnel are directed to accept reports of employee misconduct from anonymous sources. Anonymous complaints, or complaints from citizens who expressly request that their names be held in confidence, shall be accepted. The employee receiving the anonymous report will encourage the individual to submit his/her complaint in person. In any case, the complaint will be accepted. The employee accepting the anonymous complaint will complete the Professional Standards Report Form with the information provided.

5.  The PSU representative or the supervisor may attempt to resolve the complaint by explaining departmental policies and procedures, where applicable.

6. It must be remembered that in all cases, failure to promptly, objectively, and fully investigate a complaint is prejudicial to the efficiency of the Department. If the complaint is well founded, delays tend to result in loss of information and increased citizen dissatisfaction. If the complaint is unfounded, delays may prevent the investigation from exonerating the member, resulting in low morale of all personnel.

7. The employee receiving the complaint should not commit the Department to any particular course of action with regard to the complaint. This can be circumvented by explaining to the complainant that the initial interview is the first step in the process and the complainant will receive a written acknowledgment of the complaint and will also receive a summary of the complaint when it is adjudicated.

8. No employee will attempt to discourage a citizen from filing a complaint. An employee should actually encourage the filing of the complaint, so there will be no perception from within the community that a "cover-up" of inappropriate behavior has taken place.

9. The employee receiving the complaint should pay strict attention to any injuries (documenting them) and make arrangements to take photographs of any bruising, swelling, or any injury in question and attach the photograph to the complaint form for the investigating officer. If necessary, medical assistance should be provided.

10. If the individual is intoxicated, irrational, or otherwise unable to assist with the complaint process, the PSU investigator or the supervisor may give him/her the Professional Standards Complaint Form and ask him/her to complete the form and return it the next day. Upon receipt of the complaint, the PSU investigator or the supervisor will review the complaint form for accuracy and completeness.

11. The employee who is the subject of the complaint will not receive the complaint from the complainant.

12. Under no circumstances should polygraph examinations be used to discourage citizen complaints.

13. Personnel may go outside the formal chain of command to directly report allegations of supervisor misconduct.

K.    Complaints

Complaints will be handled as follows:

1. All complaints will be forwarded immediately to the PSU for screening, review and entry into the record keeping system.

2. The PSU will determine whether the complaint is a serious or a minor infraction. The PSU will make a determination whether the complaint will be investigated by the PSU or not, based on the nature of the complaint. Complaints that are minor in nature, the PSU shall forward the complaint to the Shift Commander or supervisor of the suspect employee or to the Operations Captain.

3. The PSU supervisor will ensure that proper tracking of all complaints sent to the Shift Commander, supervisor or the Operations Captain are maintained and, if necessary, followed-up as to the status of the investigation.

4. An employee of the department who interferes with, discourages, or delays the making of complaints shall be subject to disciplinary action.

**L.    Categories of Complaints that Require Formal Investigations**

1. Allegations of corruption
2. Allegations of brutality
3. Allegations of misuse of force
4. Allegations of breach of civil rights
5. Allegations of criminal and/or traffic misconduct
6. Discharge of a firearm and any firearm and ammunition violation
7. Injuries to department personnel and/or inmates/detainees
8. Department vehicle accidents
9. Prisoner escape
10. Alcohol and/or substance abuse
11. Sexual harassment
12. Serious rule infractions
13. Repeated minor rule infractions
14. Domestic Violence
15. Insubordination
16. Missing equipment
17. False Report or tampering with report
18. Disparate treatment
19. Any other allegations deemed serious by the Commissioner of Corrections.

**M.    Minor complaints may be investigated by the employee's Supervisor or the Operations Captain such as:**

1. Employee time and attendance;
2. Tardiness to work;
3. Rude Conduct;
4. Failure to submit reports;

5. Minor rule infractions of departmental rules and regulations;

6. Grooming or improper dress code; and

7. Other complaints that are considered minor complaints.

N.    **Supervisory Investigations and Authority**

Supervisory or Operations Captain investigations are limited to those incidents or minor complaints of a less serious nature, or relatively minor policy violations and will generally be initiated in one of the following ways:

1. The supervisor personally becomes aware of a complaint or violation of a rule;

2. The complaint is delegated to the supervisor by a ranking officer or the Operations Captain.

3. A complaint is reviewed by the Professional Standards Supervisor and directed to the appropriate supervisor for supervisory investigation.

4. Upon becoming aware of, or receiving notification of, a minor complaint or minor rules violations by an officer or employee under his/her control, a supervisor will begin an immediate investigation of such allegations.

5. The supervisor's investigation will be limited to questioning the complainant/s, witnesses, suspect employee, and securing all relevant evidence.

6. The supervisor or the Operations Captain will keep the complainant informed of the status of the complaint by periodic telephone or personal contacts. The supervisor or the Operations Captain will do the same to the PSU supervisor and to the Commissioner of Corrections.

7. The supervisor or the Operations Captain may request that a formal investigation be conducted without first conducting a preliminary investigation especially when there is evidence that criminal offense/s may have been committed.

8. Supervisory investigations will be completed within seven (7) days, unless the circumstances warrant an extension of time and is approved by the Commissioner of Corrections.

9. Upon completion of the investigation, the supervisor or Operations Captain will submit an investigative report with recommendations, including all documents and evidence relating to the alleged violation to the PSU Supervisor. The investigative report format shall be in accordance with section 30, Investigative Report.

10. A supervisor's or Operations Captain's investigation may be halted when information is developed that indicates a Department member may be suspended, demoted, or dismissed as a result of the information. In these circumstances, PSU will investigate the matter.

11. All supervisory or Operations Captain investigations will be reviewed by the PSU supervisor.

12. After final review by the PSU supervisor, the PSU supervisor will draft a letter to the complainant from the Commissioner of Corrections, summarizing the findings of the investigation. This letter will follow a standard format, and will be forwarded to the Commissioner of Corrections for his signature.

13. A Supervisor's or Operations Captain investigation may be stopped at any time by the Commissioner of Corrections and a full investigative authority assumed by the PSU.

14. Counseling employees to improve job performance or correct minor infractions of departmental rules, regulations and procedures.

15. Identifying training needs.

16. If the misconduct is very minor, such as a minor infraction of procedures or a case of poor judgment, which has not significantly impeded effective departmental operations, the supervisor or Operations Captain is authorized to take immediate corrective action in the form of counseling. The action taken will be documented by the supervisor or the Operations Captain for future reference.

**O.     Suspension Pending Investigation and Disposition**

1. When an employee is accused of an act that would hinder the investigation or be detrimental to the department for the accused employee to remain in an active duty status, he/she may be suspended by the Commissioner of Corrections without pay for the duration of the investigation. When this occurs, the accused employee will be given a written notice of the suspension in accordance with the applicable personnel rules and regulations, detailing the expected length of the suspension. If the employee is later cleared of wrongdoing, the employee shall be reinstated and back pay provided.

2. In lieu of suspension, the Commissioner of Corrections may place the employee under investigation for alleged misconduct under administrative duty pending the disposition of the incident or complaint.

3. The Commissioner of Corrections may immediately suspend an employee from duty if he determines that one of the following conditions exists:

   a. The employee is unfit for duty;

   b. An immediate suspension is necessary to maintain safety, health, or order of the department;

   c. The employee is alleged to have committed serious departmental rules and regulations violation, or alleged to have committed a criminal offense;

   d. Sexual harassment;

   e. Abandonment of job;

   f. Unlawful distribution, sale or transfer of drugs or drug paraphernalia on or off duty;

   g. Unlawful discharge of a firearm;

   h. False claims against the government, misappropriation of government property, embezzlement, theft or other material acts of willful dishonesty, including willfully sanctioning or concealing such acts by others;

   i. Civil rights violations;

   j. Other violations that the Commissioner of Corrections decided that immediate suspension is necessary and appropriate in the interest of the Department and/or the employee.

**P.**    **Procedures for Taking Adverse Actions**

1. A Notice of Proposed Adverse Action letter must be prepared to the employee explaining:

   a. What action is to be taken? The action must be clear and specific such as thirty (30) days suspension without pay.

   b. Describe the incident/s, which are the reasons or basis for taking the action. Give specific instances of the employee's misconduct.

   c. Notice of the employee's rights to contest the action. The employee has the right to:

      1. Review all materials relied upon to support the adverse action.

      2. Take up to three (3) days of administrative leave to prepare a response and gather evidence. The Director of Personnel may extend additional three (3) days administrative leave upon satisfactory justification.

      3. Be represented by an attorney or other representative. If the representative is a fellow employee, the representative is also entitled to three (3) days administrative leave to assist the employee in the preparation of a response.

4. Take up to twenty (20) days to respond in defense or mitigation, in writing, to the statement made in the Notice of Proposed Adverse Action letter.

5. Ask the Office of Personnel Management for an Informal Administrative Conference to present an oral response to the notice. The final decision will ordinarily be issued in writing after the conference.

6. Management must give the employee a written decision before the adverse action is effected. The decision must state which of the reasons in the Notice of Proposed Adverse Action letter have been sustained and which have been found not sustained.

7. The employee has the right to appeal the final decision to the Civil Service Commission. The employee must submit the appeal in writing within fifteen (15) calendar days after delivery of the Final Decision on Adverse Action to the Commission. The appeal must give the employee's reasons for contesting the adverse action, together with any offer of proof and pertinent documents the employee desires to submit. It should also include a request for hearing if the employee so desires.

8. Upon receipt of the Final Decision on Adverse Action, the employee must acknowledge receipt of the letter by signing and dating the attached copy.

d. Allows at least thirty (30) days before the action is final, unless circumstances demand the employee be taken off the job immediately.

e. The letter must be reviewed by the Office of Personnel Management and the Office of the Attorney General before it can be sent or given to the employee.

f. Questions relating to adverse action shall be directed to the Director of Personnel Management.

2. Preparing For The Appeal Hearing

a. A hearing will be held before the Commission or a designated Hearing Officer.

b. The Final Decision on Adverse Action is in effect until the Commission makes changes to the decision.

c. The employee may be represented at the hearing by an attorney at the employee's expense or by another representative of the employee's choosing.

d. If the employee's representative is also an employee of the government, the representative must appear on his or her own time and at their own expense.

e. The Appointing Authority or the Department will be represented by the Attorney General's Office.

3. Processes Before the Appeal Hearing

a. When the Commission grants a hearing and establishes a hearing date, it will notify the Director of Personnel Management, giving the employee's name, title, grade and organizational unit.

b. The Personnel Management must meet with the employee and representative and the appointing authority and representative, either simultaneously or at different time within seven (7) days after the Commission granted the hearing.

c. Separately, the employee and the appointing authority will be required to furnish the Director of Personnel Management and the other party the following information:

1. Employee's list of witnesses containing the name, location and occupation of each witness; a summary of each witness; anticipated testimony; and the availability of each witness in the area of the employee's duty station during the next thirty (30) days.

2. Management list of witnesses containing the name, location and occupation of each witness; a summary of each witness; anticipated testimony; and the availability of each witness in the area of the employee's duty station during the next thirty (30) days.

3. The availability of the employee and representative and the appointing authority and representative, in the area of the employee's duty station during the next thirty (30) days.

4. The Director of Personnel Management shall direct the appointing authority to make available to the Office of Personnel Management and to the employee the appointing authority's entire adverse action file for review and reproduction.

5. The employee may inspect and copy any part of the appeal file upon request.

6. The employee may request that the government, at its own expense, produce at the hearing those witnesses who are employed by the government and whose testimony the employee alleges, in writing, to be pertinent to the issues and necessary to the employee's defense. The employee may include in the list of witnesses non-governmental individuals, but arrangements for their presence at the hearing are the obligation of the employee and will be at the expense of the employee unless otherwise ordered by the Commission.

4. Parts of the Appeal File That Must be Provided by the Appointing Authority

a. The delegation of authority to the person initiating the adverse action, if other than the appointing authority.

b. The Appointing Authority's Letter of Proposed Adverse Action.

c. Materials relied on by management to support the reasons stated for taking the adverse action.

d. The employee's response to the Appointing Authority's Letter of Proposed Adverse Action and any materials submitted by the employee prior to the final decision.

e. The Appointing Authority's Final Decision Letter.

f. Any pertinent evidence developed after issuance of the Letter of Proposed Adverse Action.

g. Where the employee or the appointing authority is not satisfied with the decision of the Commission, the employee or the appointing authority may resort to the courts.

Q.    **Status of Employee While on Suspension**

1. When an employee is suspended, prior to the date of suspension, the employee must turn- in his/her badge, identification card, firearm and ammunitions, portable radio, mace, and other equipment as requested by the Logistic/Supply supervisor. The Logistic/Supply supervisor will ensure that all items are recorded and filed. The items will be returned to the employee upon return to duty.

2. Failure to turn-in the items as instructed will result in disciplinary action against the employee in addition to the original.

3. The suspended employee supervisor will ensure that pending assignments by the employee will be reassigned or suspended pending the employee's return.

4. When an employee under suspension is required to report to the PSU for interview, to undergo clinical tests and/or any request relating to the alleged misconduct, the employee will be given notice with sufficient time for preparation prior to the scheduled appointment. The officer-in-charge of the investigation will ensure that the employee completes all requests made relating to the alleged incident. The officer-in-charge will ensure that all test results and reports relating to the incident will be made a part of the final investigative report. The Department will be invoiced for expenses incurred as a result of the investigation and/or requests made by the Department.

**R.    Investigation and Adjudication of Minor Complaints**

1. The supervisor or Operations Captain investigating minor complaints shall interview the complainant, all witnesses and the suspect employee as well as review all relevant reports, and operational documents. The supervisor or the Operations Captain shall then prepare a report summarizing the incident and making appropriate recommendations. The report should be submitted to the PSU supervisor for review and entry into the record system.

2. Any recommendation for disciplinary action on minor complaints on the suspect employee will come out of the PSU. The recommendation for disciplinary action shall be forwarded to the Commissioner of Corrections for review and final disposition.

3. Minor complaints will be investigated and completed within seven (7) working days and the report submitted to the PSU.

4. The supervisor or the Operations Captain will conduct the investigation into the complaint in a fair and impartial manner.

**S.    Investigation and Adjudication of Serious Complaints**

1. All serious complaints listed above shall be investigated by the PSU.

2. The PSU investigator shall interview the complainant, all witnesses and suspect employee. The investigator must strive to conduct a thorough and objective investigation without violating the rights of the suspect employee and in accordance with this policy and procedures.

3. Investigation of serious complaints against members will be completed within thirty (30) days of the assignment to the investigator. The investigator may request extensions of the time period from the Commissioner of Corrections when extenuating circumstances exist. If the request for extension is

approved, a report on the status of the investigation will be submitted to the Commissioner of Corrections every seven (7) days. The complainant will be advised of the need for an extension.

4. The investigator will conduct the investigation into the complaint in a fair and impartial manner and in accordance with this policy and procedure and the PSSR &R.

## T.    Complainant Information

1. Written verification shall be provided to complainants that a complaint has been received for processing. This standard does not apply to anonymous complaints.

2. During the investigation, the assigned investigator shall keep the complainant informed concerning the status of the complaint against the department or its personnel.

3. Upon conclusion of the investigation, the PSU supervisor will provide the complainant a written report whether the alleged complaint was sustained or not sustained.

4. Information on procedures to be followed in registering complaints against the Department or its employees shall be disseminated to the public upon request.

5. Any person who believes his or her allegations have not been taken seriously, investigated thoroughly or resolved satisfactorily by the Department may submit a letter, stating his or her concerns, to the Commissioner of Corrections. The Commissioner of Corrections will take appropriate action as necessary.

## U.    Employee Notification and Rights

1. The PSU shall notify the suspect employee through a confidential written statement that a professional standards investigation has been started, unless the nature of the investigation requires secrecy. The notice shall state the following:

   - Name of the investigator
   - Name of the complainant(s)
   - Address of the complainant(s)
   - Date and time when complaint was made
   - A summary of the nature of the complaint

2.  After a member is advised of a complaint against him/her, he/she shall not knowingly have contact with the complainant or witnesses from outside the Department, except in exigent circumstances within the scope of his/her duties or until the case is disposed. If contact is made he/she should immediately notify his/her shift commander or supervisor.

### V.    No Retaliation

1.  An employee who is the subject of a misconduct complaint shall not intentionally take any action, whatsoever, against the complainant, in retaliation for filing the complaint. Any employee who retaliates against another as a result of the filing of such complaint shall be subject to disciplinary action up to and including dismissal from the Department.

2.  This does not prohibit the affected employee from filing a civil suit or taking other lawful action against the complainant in any case where the complaint is determined to be intentionally false and malicious.

### W.    Individual Employee Responsibility

1.  Each employee of the Department will perform his/her duties and responsibilities and will assume the obligations of his/her rank and position in the investigation of complaints or allegations of misconduct against any employee of the Department.

2.  Each employee will cooperate fully and truthfully with the PSU investigator, supervisor, and/or the operations captain or any person conducting an investigation relating to misconduct against any employee of the Department.

3.  Any employee of the Department, regardless of rank or position, who has knowledge of circumstances surrounding a complaint or any information regarding misconduct by any employee will immediately submit a written report to his/her immediate supervisor, operations captain or the PSU. This report will be accurate and will include all information that is known to the employee. Failure to do so will constitute a violation by that employee.

4.  Upon receipt of a complaint against an employee, supervisors, operations captain or the PSU personnel will use the Professional Standards Complaint Report form to initiate the complaint process. The Professional Standards Complaint Report will be forwarded to the PSU if the complaint was initiated by the supervisor or the operations captain.

5.  Any complaint that is of a serious nature as listed above or complaints that will impact the Department will be reported to the Commissioner, Director of Corrections, Deputy Director of Corrections, and Operations Captain

immediately regardless of the time or day. Complaints that are minor in nature will be reported as soon as possible.

X.    Employee is the Subject in an Administrative Investigation

1. As an employee of the Department, the employee has an obligation to answer questions specifically, directly, and narrowly related to the performance of his/her official duties. This obligation exists even though the answers to the questions may implicate the employee in a violation of departmental rules, regulations and procedures, which may ultimately result in some form of discipline up to and including dismissal.    In short, in administrative investigation, there is no right to remain silent.

2. The employee has the right to be informed of the name of the investigator who is investigating the alleged misconduct, including the name and address of the complainant. Prior to the commencement of any questioning, the employee shall be advised using the Administrative Investigation Only form that he/she is being questioned as the subject of an investigation into potential violations of department rules and regulations, or fitness for duty. The employee shall be advised of the subject matter under investigation, and that the employee will be asked questions specifically related to the performance of his/her official duties. The employee will be further advised that he/she may be subject to departmental discipline for refusing to answer a question directly related to the performance of his or her duties, or for not answering truthfully. Lastly, the employee shall be advised that he/she have a right to consult with a representative of his/her choice, including an attorney and have the representative or attorney present during the interview. While the Sixth Amendment right to counsel does not extend to administrative investigation, an employee shall be permitted to choose an attorney at his/her own expense as their representative if he or she so desires. The employee will sign the form and indicate the date and time. The signature of the person witnessing the advisement is also required. The Administrative Investigation Only form will be made a part of the investigative file.

3. If the employee refuses to answer questions during the interview, the interviewer should inquire as to the reason(s) for the refusal. If the employee states that he/she refuses to answer any questions on the grounds that he/she may incriminate himself/herself in a criminal matter, even though the investigator do not perceive a criminal violation, the interview will be discontinued. If the interviewer is a supervisor or the Operations Captain, the PSU supervisor will be notified.

4. If the employee refuses to answer on any other grounds, he/she should be advised that his/her refusal would subject him/her to disciplinary action, up to dismissal, in addition to discipline for the matter that caused the interview in

the first place. If the employee still refuses, the interview should be terminated and appropriate disciplinary action initiated.

5. The investigator must be in control of the interview and cannot allow the representative or subject employee to take control. The representative or attorney cannot interfere with the interview. If the representative or attorney is disruptive or interferes, the investigator can discontinue the interview, documenting the reasons the interview was ended.

## Y.    Employee is Witness in an Administrative Investigation

1. When interviewing an employee as a witness, he/she must be made aware of the differences between being a witness in an administrative investigation and being the subject of an administrative investigation. The employee should be advised that he/she is not the subject of the investigation at this time. If, at any time, the employee becomes a subject of the investigation, the employee should be advised of that fact and the appropriate procedures followed.

2. Employees who are witnesses have an obligation to cooperate. They must truthfully answer all questions that are narrowly and directly related to the performance of their duty. Performance of duty includes an employee's actions, observations, knowledge, and any other factual information of which they may be aware, whether it concerns their own performance of duty or that of other employees. If the employee feels that his or her answer would incriminate him/ her in a criminal matter, the employee must assert his/her Miranda Rights.

## Z.    Employee is the Subject in a Criminal Investigation

1. Once an investigation becomes criminal in nature, the subject employee shall be advised of his/her right against self-incrimination consistent with the requirements of the law and this policy and procedures. Criminal interviews should be conducted only with the prior approval and at the direction of the Attorney General's Office, Criminal Division.

2. Generally, the need to issue Miranda warnings is triggered whenever the questioning of an individual is custodial in nature. With respect to custodial interviews, the question is whether a reasonable person would believe that he/she is free to leave. To ensure that the subject employee's rights are not violated, Miranda Rights must be given. If the subject employee waived his/her rights, the interview may then continue.

3. If the employee has invoked his/her Miranda Rights, but the Department deems that in order to properly conduct its investigation, it must have the answers to specific questions, the Department must seek assistance from the Attorney General's Office, Criminal Division. No employee who is subject to

criminal prosecution shall be ordered or coerced to waive any rights granted
by law.

4. Where the employee is a witness in a criminal investigation, the same
procedure should be followed under the Section IV.Y, Employee is Witness in
an Administrative Investigation.

**AA.    Interview Procedures**

1. Purpose on an Interview

The primary purpose of an interview is to elicit information that will allow the
investigator to document an accurate accounting of an incident or event. In
order to accomplish this goal, the investigator must answer the five (5) Ws
and H questions—Who, What, When, Where, Why and How questions
relating to the incident or event. The success of an interview rest in answering
the five (5) Ws and H questions and proper planning. The information gained
during an interview will go a long way toward solving the matter regardless of
the outcome. The investigator will be mindful of the following when
interviewing witnesses and interrogating subjects:

2. Planning the Interview

It is important to carefully plan and prepare for each interview. There must
first be a belief that the person to be interviewed is able to provide information
or evidence, which will assist the investigator. The structure of the interview
and method of recording must be planned.

3. Interview's Location and Time

Interviews should take place at the PSU, in the supervisor's office or a
reasonable and appropriate location designated by the investigator. If the
witness suggest another location other than the location designated by the
investigator, careful consideration should made, not to intimidate the witness.
The employee's supervisor should be made aware of the time and place of the
interview so that the employee's whereabouts are known. In deciding the
location of the interview, the investigator should be mindful of the safety
concerns, private, comfort and free from interruption and travel. The
interview should be conducted at a reasonable hour when the employee is on
duty, unless the seriousness of the matter requires otherwise.

4. Recording of Interview

a. Signed Statement of Witness

A witness may be asked to provide a written statement of the incident based on his or her knowledge of it. This approach may be counterproductive, as the investigator will not have the opportunity to ask follow-up questions relating to the incident. The investigator should review the statement provided by the witness and if necessary follow-up questions should be asked. The investigator will ensure that the statement provided by the witness has the following information: Name of the witness, DOB, address, telephone number, rank, work assignment, signature, and date and time.

b. Written Question and Answer Interview

Using this method, the investigator will first ensure that all the basic information of the witness, investigator's name, date and time of interview are written on the first page of the question and answer document prior to the commencement of the question and answer session. The investigator will write the question and followed by the answer. The questions and answers will be clearly noted. At the end of the question and answer session, the investigator will request the witness to review the questions and answers and should changes be necessary, appropriate changes will be made. The witness will initial any changes made, sign, date and time. The investigator will sign the statement also.

c. Tape Recording Interview

1. The investigator will have a tape recorder available that can record quality audio.

2. The tape-recorder should be loaded with clean tapes in the presence of the interviewee. The tapes must be unwrapped in the presence of the interviewee. The tape-recorder should then be set to record.

3. Person conducting the interview, the interviewee and any other persons present should introduce themselves at the start of the interview. The interviewer should also state for the record the time, date and place of the interview.

4. At the end of the interview, the master tape must be properly labeled with the case number and stored in a secured location.

5. If there is a need to produce a copy of the taped interview, a written explanation must be provided. Upon request by the subject employee, a complete transcript or electronically recorded copy of the interview will be made available without charge and without undue delay.

BB.    Evidence Collection

Evidence collection for investigations involving Department of Corrections employees shall be conducted in accordance with the following guidelines:

1.  Where there is reasonable suspicion that an employee is under the influence of alcohol or illegal drugs while at work or about to begin work, he/she shall submit to breath or urine test for the presence of alcohol, cocaine, marijuana, opiates, amphetamines, and phencyclidine, upon written notice from the employee's supervisor. The test procedures shall be in conformance with the Office of Personnel Management Alcohol and Drug Free Workplace Policy. Except as otherwise provided, the government shall pay for the testing. The test results shall be kept confidential.

2.  Employees shall be required to submit to any other type of medical, physical or laboratory examination pursuant to criminal rules or procedures. All tests that may result in criminal prosecution should be conducted pursuant to a court order or an investigative detention rule. Employees that refuse to perform or participate in a court order tests may be subject to a contempt of court sanction as well as departmental sanctions. The Department shall pay for any medical or laboratory test required of the employee.

3.  Employees shall be required to submit photographs or participate in a line-up if in the course of a criminal investigation the evidence is material to a particular offense having been committed. The line-up must be constructed so as not to be unfairly suggestive. The same rule applies to photo arrays. The Department should maintain a recent photograph of each employee that can be used in the event a photo array is needed for identification. If a photo array is used, it must be properly retained for possible evidentiary purposes.

    Photographs and videotape can be useful tools if relevant to the investigation. In the event of a complaint involving excessive use of force, photographs of the complainant and the subject employee should be taken as close as possible to the time of the incident. In addition, photographs can be used to create a record of any other matter the investigator believes is necessary. Whenever possible, color photography should be used.

4.  Employees may be required to submit financial disclosure statements when it is material to the investigation.

5.  An employee's personal property will not be subject to search or seizure without consent or a search warrant. Department property, however, may be searched at any time even if it is assigned to or used exclusively by a single employee.

6. Departmental communications facilities and/or equipment may be monitored at any time as allowed by law.

7. Personnel of the department may be assigned departmentally owned property such as, but not limited to: vehicles, lockers, desks, cabinets and cases for the mutual convenience of the department and its personnel. All personnel are advised that the storage of personal items in such containers or facilities are at the risk of the employee and the department will not be responsible for any losses. This assigned equipment is subject to entry and inspection during a particular internal affairs investigation being conducted by the department, where the department has a reasonable suspicion that evidence of work-related misconduct will be found. Assigned personnel shall have the right to be present during such inspection and shall be served with notice as to the basis for such an inspection.

8. All citizens, including department employees, have a Fourth Amendment right to be free from unreasonable searches and seizures. In a professional standards investigation, the Fourth Amendment applies to any search undertaken by the department. Professional standards investigator, supervisors and Operations Captain must be cognizant of the various principles governing searches and seizures particularly where the investigator will conduct a search as part of a criminal investigation or the investigator will search personal property belonging to the subject employee. In professional standards investigation, a search warrant should be obtained before a search is conducted on the subject employee's personal property, including his or her home, personal car, bank accounts, safety deposit boxes, briefcases etc. In addition, warrant may be necessary where a search of the subject employee's workplace is conducted and is determined that the employee has a high expectation of privacy in the place to be searched. The investigator will consult with the Attorney General, Criminal Division regarding searches and seizures questions. To ensure that the employee's rights are not violated, all searches should be accomplished either through a search warrant or consent to search. If consent to search is utilized, the investigator will follow standard law enforcement procedures and have the subject employee sign a consent to search form after being advised of the right to refuse such a search.

## CC.  Polygraph

1. No employee shall be required to take a polygraph examination as a condition for continuation of employment. If an employee voluntarily chooses to take a polygraph examination then it will be made available.

2. Polygraph tests of civilian complainants and witnesses should only be used when there is a reasonable suspicion that their statements are false and is strictly voluntary.

3.  An employee under investigation cannot be compelled to submit to a polygraph or similar type examination used to detect deception. An employee may voluntarily submit to such examinations and should be advised that the results of that examination will not be used in any commission hearing or trial court to prove guilt or innocence.

**DD.     Investigative Report**

At the conclusion of the PSU, supervisory or Operations Captain investigation on complaints, the investigator, supervisor or the Operations Captain shall submit a written report.  The report should consist of an objective investigation report, which recounts all of the facts of the case, summary of the case along with conclusions for each allegation and recommendations for further action.

1.  Investigative Report:  The investigative report should be in memorandum format with the following information:

    - Date:
    - To:  Commissioner of Corrections
    - From:  (Name of the investigator, supervisor or the Operations Captain)
    - Subject: Professional Standard Investigation
    - Case Number:
    - Accused Member:
    - Rank: Name:
    - Unit of Assignment/Shift:
    - Sex:
    - Race:
    - Age:
    - Date of Hire:
    - Name of Complainant:
    - Sex:
    - Race:
    - Age:

2.  Allegations:  The second part of the investigative report lists each allegation separately. Include date, time and location where the complaint occurred, by whom the complaint was received and summarize the complaint.

3.  Investigation:  The third part of the investigative report summarizes all investigative procedures followed to resolve the total issues and results that were achieved. Evidence must be submitted to support conclusions.

4.  Findings:  Each allegation must be classified as one of the following:

- Unfounded
- Exonerated
- Not Sustained
- Sustained
- Policy Failure
- Misconduct Not Based on Original Complaint.

If the classification is "Sustained", indicate the rule number that has been violated, the content of the rule, and how the rule was violated by the accused member.

5. Record of Previous Disciplinary History: When an investigation is classified as "Sustained" or "Misconduct not based on original complaint", the investigator will review the accused member's records of previous disciplinary history including performance evaluations. This information will be considered when the Investigator is determining his recommendation for disciplinary action and it will be included as an attachment to the final investigation report.

6. Recommendation for Disciplinary Action: One overall recommendation for disciplinary action will be made by the assigned investigator, supervisor or the operations captain. The recommendation will be for all the sustained findings. Recommendations will not be made for each sustained allegation. Final approval of the findings of the investigation and disciplinary action will be the Commissioner of Corrections.

7. Summation: Brief descriptive summary of the circumstances and conclusion.

EE.    **Confidential Nature of Investigations and Files**

All internal investigation reports will be considered confidential in nature and the records of these investigations will be maintained in a separate file by the PSU. All files will be secured and access to the files will only be authorized by the Commissioner of Corrections.

FF.    **Employee Access to Personnel Files**

A member may request to review his/her personnel file by filing a written request to the Commissioner of Corrections through the Chain of Command. If the request is granted, the review will take place during normal business hours in the presence of the PSU supervisor. The file and its contents will not leave the PSU office.

GG.    Purging of the Files

The PSU supervisor will review the files on employees that have been disciplined for standards of conduct violations and remove disciplinary actions older than five years and forwarded to the employee if there has been no pattern of discipline problems since that date. Documentation of minor disciplinary actions older than one year will be removed from the file and forwarded to the employee if there has been no pattern of discipline problems since that date.

**HH.    Collateral Issues**

The work of PSU should not be limited to resolving citizen reports by narrowly focusing on whether the subject officer engaged in misconduct. In many cases, the examination of collateral issues presented by the citizen's report can be as important as the resolution of the allegation itself. For example, while investigating an allegation of excessive force, the actions of the officer in using force may be proper, but should force be used in the first place. The examination of collateral issues can provide the Commissioner of Corrections and the department with information concerning:

- The utility and effectiveness of the department's policies and procedures;
- The competency and skills of individual officers;
- Appropriate topics for in-service training programs; and
- The allocation of resources by the department.

The identification and examination of collateral issues is of critical importance to the professional standards process. Investigators, supervisors are in the unique position of examining DOC operations from the inside. Their insight, if properly used, can be extremely helpful to management. In contrast, the failure to use this resource can deprive the department of the ability to identify and correct problems with personnel and procedures through self-critical analysis. It can also lead to an erosion of support for the department in the community. Professional standards process that is objective and complete is critical to the credibility and reputation of the department within the community.

**II.    Prevention of Employee Misconduct**

1. Every employee of this agency has a personal responsibility for, and will be held strictly accountable for, adherence to the departments' standards of conduct, rules, policies and procedures.

2. The department has the responsibility for, and will provide to each employee, sufficient and proper training, supervision and policy guidance to ensure that all employees are apprised of the demands and requirements of the department with regard to employee conduct, duties and responsibilities.

3.  The department shall take all reasonable measures to ensure that employees are assigned only to duties and responsibilities in which they have the requisite knowledge, skills, abilities and training.

4.  The primary responsibility for maintaining and reinforcing employee conformance with the standards of conduct of this department shall be with employees and first-line supervisors.

5.  Supervisors shall familiarize themselves with the employees in their unit and closely observe their general conduct and appearance on a daily basis.

6.  Supervisors should remain alert to indications of behavioral problems or changes that may affect an employee's normal job performance and document such information where deemed relevant.

7.  Where a supervisor perceives that an employee may be having or causing problems, the supervisor should assess the situation and determine the most appropriate action including emergency removal of employees from the line of duty and for issues dealing with employee mental health assistance.

8.  A supervisor may recommend additional training to refresh and reinforce an employee's skills, abilities or understanding of department policy, rules and regulations.

9.  Counseling may be used by the supervisor to determine the extent of any personal or job problems that may be affecting performance, and to offer assistance and guidance.

10. The supervisor shall document all instances of counseling or additional training used to modify an employee's behavior.


Prepared By: _____          _11-21-07_
             John M. Ayuyu                            Date
             Deputy Director of Corrections


Reviewed By: _____          _11/21/07_
             Gregory F. Castro                       Date
             Director of Corrections


Approved By: _____          _11/21/07_
             Lino S. Tenorio                         Date
             Commissioner of Corrections