**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**
# DEPARTMENT OF CORRECTIONS
Vicente Taman Seman Building
P.O. Box 506506, Saipan, MP 96950
Telephone: (670) 664-9061 Facsimile: (670) 664-9515



| Part | Section | Subject | Policy No. | Review Date |
|---|---|---|---|---|
| Institutional Operation | Security and Control | Use of Firearms | 3.1.12 | |
| **ACA Standards** | 3-ALDF: 1D-17 Use of Force; 3A-27 Firearms and security equipment are inventoried at least monthly; 3A-28 Written Report is submitted on Use of Force; 3A-29 Injured Persons receive Medical Attention; 3A-30 Safe Unloading and Reloading; 3A-31 Restriction of Use of Force to Instances where it is Justified; 3A-32 Use of Firearms | | | |
| **Consent Decree** | Paragraph 54 Develop Facility Policies and Procedures | | | |

## I. PURPOSE

To establish guidelines for authorized personnel issued a firearm on the appropriate use of force when using a firearm.

## II. POLICY

It is the policy of the Department of Corrections to provide authorized personnel with proper training and guidance in the permissible use of firearms. The use of firearm is considered the most defensive weapon and should only be used as a last resort.

## III. PROCEDURES

The use of force is sometimes necessary in a correctional environment for justifiable self-defense, protection of others, protection of property, and prevention of an escaping felon that is a threat to the public. Force should be employed to the degree necessary to control the person, and to the level that will be effective with minimum harm to both, the staff and the person force is being applied too. Personnel carrying firearms are required to under-go a forty hours mandatory firearms safety course prior to issuance and being posted to post that requires them to be armed.

### A. Authorized Firearms

The following firearms, which are government owned, may be issued for official use, and will be carried on the department inventory:

- Smith and Wesson .38 Caliber Revolver
- Smith and Wesson .357 magnum revolver
- Smith and Wesson 9mm semi-automatic pistol

**B. Authorized Ammunition**

All ammunition used must be safe and in good condition and shall be as follow:

1. Pistols/revolvers ammunition shall be standard commercially manufactured lead ball, semi-jacketed, full jacketed, or semi-jacketed hollow point in appropriate bullet weights to match the caliber, but in no case less than 110 grains or more than 240 grains weight. Authorized calibers are those to fit the authorized pistols and revolvers listed in part A. Magnum load pistol ammunition shall not be used.

2. The use of "wad cutter" or "reloaded" ammunition for service use is prohibited. (We should be able to use item 2 during target practice in addition to exchanged ammunition.)

3. Ammunition shall be exchanged every six months from date issued, or sooner if circumstances indicate that the condition of the ammunition is adversely affected, such as by the exposure to inclement weather.

4. All exchanged ammunition will be stored in the Armory for target practice.

**C. Inspection and Inventory of Firearms**

All firearms owned by the Department of Corrections shall be kept in a serviceable condition at all times, the Security Officer will have a complete inventory list of all issued firearms. Inspection procedure will be as follows:

1. The Security Officer will be required to ensure that all department issued firearms are inspected every month or as needed to ensure that all are in a serviceable condition.

2. The Captain of Operations will ensure that shift commanders in each shift inspect issued firearms on a weekly basis and submit a report on all weapons condition to the Director of Corrections.

3. Any firearms found not serviceable will be turned into the Armory for replacement; a report must accompany the firearm being turned in justifying the replacement request.

**D. Safe Unloading and Reloading**

A clearing barrel will be provided at the staff entrance and at the vehicular sally port of the facility, all personnel of the Department of Corrections and other law enforcement officers are required to clear weapon before entering secured areas of the facility. The clearing of weapons or unloading will be as follows:

1. Un-holster weapon and face muzzle into the clearing barrel.

2. With muzzle in the barrel, remove magazine from weapon or remove ammunition from revolvers cylinder.

3. Inspect chamber or cylinder visually and physically to ensure that ammunition or rounds are cleared out.

4. When weapon is clear, point muzzle into clearing barrel and fire weapon for final clearing check.

5. Holster back clear weapon and proceed to designated area for safe keeping or storage.

**E. Storage and Control**

All Government owned firearms will be stored in and kept in the Armory, the Safety Officer will be responsible of storage and control of firearms and other security equipment. The control of firearms and security equipment will be as follows:

1. Authorized personnel must under-go mandatory trainings prior to issuance of firearms or any security equipment.

2. The Training Officer will forward a memorandum to the Security Officer of authorized personnel to be issued firearm providing proof of successful completion of mandatory firearms safety course.

3. The Safety Officer will have a complete inventory of issued firearms recording, weapon model number, serial number, and issued numbers of ammunitions.

4. A quarterly report of all firearms and security equipment stored in the Armory will be provided to the Director of Corrections and a copy to the Commissioner of Corrections. The quarterly report shall consist of the following; number of firearms and security equipment stored, condition, list of replacement or damages if any, and any other important information regarding the Armory.

**F. Situational Force Level**

The situational force level requires the selection of force level to be used depending to the situation. The correctional officer relies upon reasoned discretion in terms of the use of force option; the force is generally dictated by the amount of resistance from the individual. Depending on the situation, the officer will select the appropriate force level to be used to control the situation with minimum harm to both, the officer and the individual. In the event that the situation worsens or escalates, the officer will re-evaluate the situation and used the next force level or appropriate force level. Selecting the appropriate force level is based on the officer's knowledge, skills and ability to justify the use of force. Appropriate force level are to be taken before resorting to last option, which is, use of lethal or deadly force.

**G. Use of Force Continuum**

Correctional officers will be trained on the use of force continuum. With the use of force continuum, officers will be able to make and use the most appropriate force

level depending on the situation. The use of force continuum can be seen as several general levels:

1. **Presence/Appearance:** This reflects the officer's demeanor and attitude.

2. **Voice/Tactical Communication Skills:** This requires a show of the authority by communication with verbal and non-verbal dialogue or command. The individual will be given commands and will be informed what is required and given a chance to comply. Non-verbal dialogue includes assuming an empty hand defensive position as well as the display of a defensive position.

3. **Control and Restraints Techniques:** When the individual fails to respond or comply with verbal instructions or resists in a defensive manner, the officer seeks compliance by the use of physical means using pressure compliance holds, blocking, restraining and controlling or escorting holds.

4. **Chemical Agents and Compliance Tools:** These levels direct the use of more aggressive techniques as well as using defensive weapons against the individual. At this level, the individual has become an aggressor, attacks the officer, or there is fear for the safety of the officer and others, and lower level techniques have been exhausted or would be ineffective. At this level, chemical agent such pepper mace and pain compliance tools such as batons are used to exert pain compliance against the aggressor. When chemical agents and batons are used, the officer must use them as defensive weapons and in accordance with the training provided. Officers are reminded that when chemical agents and/or baton are used to exert physical force upon a person, it must be justified and must conform to the use of force continuum.

5. **Temporary Incapacitation:** When the above techniques are ineffective, or the individual becomes more aggressive, the officer seeks compliance by additional physical means that includes the use of hands and feet to apply come-along holds, pressure points, and pain compliance techniques. These techniques should be used in accordance to the defensive tactics training. Chokeholds, blows to the head, face and neck are prohibited. When using PR-24 or straight batons (ASP), chokeholds, blows or strike to the head, face and neck are prohibited. PR-24 and straight batons are considered defensive weapons and should be used in accordance to the department's training requirements.

6. **Lethal Force:** The final level or situation requires the use of additional tactics or tools against individuals who possess knives or other instruments; or any individual capable of inflicting serious bodily injury or death. This level allows the use of non-lethal or the lethal force option.

**H. Use of Deadly or Lethal Force**

An officer is justified in using deadly fore if he/she has probable cause to believe that the individual poses a threat of death or immediate danger of serious bodily injury. The use of potentially deadly force carries the obligation and responsibility to exercise discipline, caution, restraint and good judgment. Correctional officers must

keep in mind that the use of potentially deadly force presents danger to the individual and to innocent parties. Deadly force is to be use only as last resort after all reasonable alternatives have been exhausted. Justification for the use of deadly force must be limited to what reasonably appears to be the facts unknown or perceived by the officer at the time. Facts unknown to the officer, no matter how compelling, cannot be considered in later determining whether the use of deadly force was justified. The following four (04) conditions or elements must be part of the decision-making process to determine whether the individual's action constitutes the threat or imminent danger of death or serious bodily injury:

1. **Ability or Apparent Ability:** Does the individual posses the ability if the apparent ability to cause serious injury or death to you or a third party? Disparity in size, age, strength, numbers, and level of the aggressiveness of the involved parties are all important factors when considering the element of ability.

2. **Opportunity:** The officer must reasonably believe that the individual are within effective or close range and in a position to cause serious bodily injury or death to the officer or to a third party.

3. **Imminent Danger:** The individual must be acting in such manner that a reasonable person would conclude that serious bodily injury or death is imminent.

4. **Exhaust all Reasonable Option:** The officer should employ deadly force as a last resort when there is no reasonable alternative.

**I. Justifiable Use of Firearms**

1. To protect the life of an officer or another person.

2. To protect property in cases such as arson, when the act is likely to cause death or serious injury to others.

3. At an escaping felon or inmate/detainee who pose a threat to the community.

4. To apprehend a violent person known to be armed and dangerous and cannot be apprehended without risking the loss of life or serious injury.

5. At an inmate/detainee or person carrying a weapon or attempting to obtain a weapon by force, if the officer has reason to believe that the individual intends to cause death or serious injury.

**J. Reporting Use of Force**

When an officer uses any physical force to control an uncontrollable inmate/detainee or for what ever reason, or when an inmate/detainee complaints of force being used against him/her, the officer shall notify the Shift Commander immediately and submit a written report to the Shift Commander. The report must explain in detail what transpired and who was involved, the incident report must be submitted prior to the end of the shift. Copy of the incident report will be given to the Commissioner of

Corrections, Director of Corrections, Deputy Director of Corrections, and the Captain of Operations. The Commissioner of Corrections will initiate an investigation on the incident through the PSU.

When deadly force is used, the Shift Commander will immediately inform the Commissioner of Corrections, Director of Corrections, Deputy Director of Corrections, Captain of Operations, and the Staff Psychiatrist. The Psychiatrist will initiate a stress debriefing to officers involved in the use of deadly force.

**K. Ensuring Aid after Use of Force**

When an officer or an inmate/detainee is injured due to use of force, the Shift Commander will ensure that immediate and necessary medical assistance is provided. Any injury acquired from the use of force will be photograph and kept for record purpose. When chemical agents are used, individuals exposed will receive proper aid in accordance to the training on chemical agents. Refer to the Use of OC Pepper Spray Policy and Procedure.

**L. Reducing Post-Trauma for Officers Involved in the Use of Deadly Force**

Nothing can be more potentially destructive to a corrections officer than having to use deadly force in the performance of his/her duty. The following is formulated to deal with the human aspect in reducing Post-Trauma for officers involved in the use of deadly force:

**1. Post-Incident Reaction to the Use of Deadly Force**

a. There is a wide variation in post-incident reaction to the use of deadly force. Each individual is unique and reacts differently and not every officer will have a traumatic reaction to the use of deadly force.

b. Because each individual is unique and acts differently, involved officers need the support from supervisors and fellow officers that will benefit them short-term and long-term. Due to the unique reactions of an individual, situation has to be dealt with on a case-to-case basis.

c. Commanders and Supervisor must remember that every officer involved in the use of deadly force may experience post-traumatic reaction and each officer should have the opportunity to receive the support and treatment that may be necessary.

**2. Commanders Responsibility Following the Use of Deadly Force**

Whenever there is use of deadly force, the shift commander must ensure that the following actions are taken appropriately:

A. Assign a companion officer to the officer that employed the use of deadly force.

1. The primary interest of the companion officer is the needs and feeling of the officer involved immediately after the incident. The companion officer should allow himself/herself to absorb the involved officer's anger that is commonly experience. Officers involved may also display anger or display inappropriate attitude and/or behavior to fellow officers, peers, family members, or to superiors or perceived of lack of support or may perceived inappropriate handling of the investigation. As it is more acceptable emotions to officers involved, anger substitutes well for any helpless or scared feeling experienced as a result of the use of deadly force.

2. This role may be filled by a supervisor or whom the officer has confidence or a representative of the department.

3. The companion officer should have no other duty.

B. Remove the involved officer from the immediate scene.

1. The Shift Commander shall ensure that officers involved in the use of deadly force will be removed from the immediate scene to get away from sight and sound.

2. When involved officers are removed from the immediate scene, they may be called back for interview when an assigned detective is on the scene.

3. If possible, the involved officer shall be transported to the Criminal Investigation Office and await the arrival of the assigned detective of the incident, transporting officer should avoid discussing the incident but should provide aid and assistance when needed.

C. Schedule Debriefing after Use of Deadly Force.

1. The first concern of officers involved in the use of deadly force is usually their families, in the process of investigating the incident, this is often overlooked. Officers involved should be given the opportunity to call their family and informed them that he/she is safe.

2. If circumstances dictate that the involved officer cannot notify his/her family, the Shift Commander or the Captain of Operations will be task to notify the officer's family.

3. The debriefing process will allow involved officers to discuss the incident a few times if possible, fellow officers will be able to give needed support and sense of comfort.

D. Provide official reassurance from someone in authority

1. Involved members in the use of deadly force normally feel that they did the right thing, the only thing to do, and the force exercised was undesirable but was a necessary option.

2. Officers involved need reassurance from someone in authority, reassurance will be delivered in a timely manner and truthfulness.

E. Allow the involved officer to access an attorney when reports are submitted

1. In the hours following the use of deadly force, many legal question races through the mind of officers, having a supportive figure of an attorney or representative will help relieve a lot pressure.

2. An officer may request an attorney during the process of interrogation or interview, however, the officer is not entitled to confer with attorney prior to making all required reports.

F. Obtain Firearm after Use of Deadly Force

1. When deadly force was employed, the Shift Commander shall ensure that the involved officer's firearm is obtained promptly after the incident.

2. The removal of firearm will be done in a discreet manner and away from public view.

3. If the involved officer holsters back his/her firearms, the entire duty belt shall be remove rather than having the officer un-holster his/her firearm.

G. Media Access

1. Officers involved in the use of deadly force will be restricted to media access.

2. Only designated information officer (PIO) will be authorized to entertain concerns of the media.

H. Re-Assignment after Use of Deadly Force

1. After submission of required reports and being interviewed by the assigned detective, the involved officer will be relieved from duty for the remainder of the shift.

2. The involved officer will be re-assigned to a desk duty until further notice.

3. The officer shall not return to normal duty assignment until completion of investigation and cleared by staff psychiatrist.

**3. The Responsibility of the Commissioner of Corrections**

After the Use of Deadly Force, the Commissioner of Corrections must ensure that the following procedures are followed:

A. Administrative Leave

1. The involved officer will be placed on administrative leave for eight (08) hours.

2. Additional time-off will be given upon the request of the officer or recommendation of the staff psychiatrist, Facility Commander, or the Commissioner of Corrections.

B. Provide Stress Debriefing within 1-2 days.

1. Officer that employs the use of deadly force shall receive a stress debriefing with the staff psychiatrist within twenty-four hours.

2. Other officers involved shall receive a stress debriefing with the staff psychiatrist within forty-eight hours.

3. All reports from the staff psychiatrist will be confidential and the department is not entitled to receive a copy of the report, unless the officer cannot perform his/her regular assignment.

4. If the officer cannot perform his/her duties, additional administrative leave will be given, with the recommendation of the staff psychiatrist and approval of the Commissioner of Corrections.

C. Maintain a Shooting Folder

1. To avoid gossip, the Commissioner of Corrections shall ensure that a brief memorandum of the incident is furnished within the department to alleviate or reduce the number of questions and comments from co-worker upon his/her return to duty.

D. Start an information flow to the involved officer

1. During the process from incident toward the final judicial and administrative activities, there are always interruptions and the delivery of information to the officer involved is often delayed, or end-up hearing it last.

2. The delivery of vital or needed information shall be established to the officer involved and in a timely and prompt manner.

E. Screen incoming calls for involved officers

1. After the use of deadly force incident, involved officer are likely to receive inappropriate phone calls from the public or from the suspect's family member.

2. Phone calls for the involved officer from the media, unknown callers, and suspect's family member or from the general public will be denied.

F. Chaplain Service

1. Involved officer may sometime request the designated chaplain of the department for any additional consultation that he/she may need. Chaplain Service will be provided upon the request of the officer.

2. Consultation from the chaplain will be confidential and will not be recorded.

3. Consultation from the chaplain may help clarify some of the religiously based guilt that is frequent after employing the use of deadly force.

Prepared By: [signature] 10-22-07
John M. Ayuyu — Date
Deputy Director of Corrections

Reviewed By: [signature] 10/22/07
Gregory F. Castro — Date
Director of Corrections

Approved By: [signature] 10/23/07
Lino S. Tenorio — Date
Commissioner of Corrections

# DEPARTMENT OF CORRECTIONS
## FIREARM INSPECTION SHEET

DATE: ____________________

ASSIGNED OFFICER'S NAME: ______________________________________________
(LAST) (FIRST) (MIDDLE)

RANK: _________________________ TYPE OF FIREARM: ________________________

1) PROPER SINGLE AND DOUBLE GOOD_____ FAIR______ POOR_____

2) PROPER CYLINDER ROTATION AND LATCHING GOOD_____ FAIR______ POOR_____

3) FIRING PINS AND SIGHTS SHEARED PIN OR DAMAGED SIGHTS GOOD_____ FAIR______ POOR_____

4) BORE AND CHAMBERS (RUST, DIRT, PIN OR DAMAGED SIGHTS) GOOD_____ FAIR______ POOR_____

5) CARTRIDGES (DENT, PRIMER, NON-CRIMPED PORJECTILE) GOOD_____ FAIR______ POOR_____

6) PROPER SLIDE ACTION AND EJECTION GOOD_____ FAIR______ POOR_____

INSPECTED BY: _______________________________ RANK: _____________________

SUPERVISOR'S SIGNATURE: _______________________________

REMARKS:

___________________________________________________________________________

___________________________________________________________________________

___________________________________________________________________________

___________________________________________________________________________

___________________________________________________________________________

[illegible]

[illegible]

[illegible]

| [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |

[illegible]

[illegible]