



COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

DEPARTMENT OF CORRECTIONS

Vicente Taman Seman Building
P.O. Box 506506, Saipan, MP 96950
Telephone: (670) 664-9061 Facsimile: (670) 664-9515

| Part | Section | Subject | Policy No. | Review Date |
|---|---|---|---|---|
| Institutional Services | Reception and Orientation | Booking Procedure | 4.1.3 | |
| ACA Standards | 3-ALDF: 1F-07 Inmate/Detainee Booking; 4A-02 Admission and Orientation of New Inmates/Detainee; 4A-03 Inmates/Detainees are separated from General Population during admission; 4A-04 Itemized inventory of personal property during admission; 4B-01 Initial Classification to determine housing assignment; 4A-01 Health Screening and Examination; 3A-08 Male and Female officer required when same gender are in a housing unit. | | | |
| Consent Decree | Paragraph 54 Develop Facility Policies and Procedures | | | |

**I.   PURPOSE**

To describe the procedures that will be used to admit inmates/detainees into the facility.

**II.  POLICY**

It is the policy of the Department of Corrections (DOC) to properly admit and process inmates/detainees into the facility by ensuring that the person is legally committed, accurate identification information is obtained, and to classify the inmate/detainee accordingly to maintain the facility's security.

**III. PROCEDURES**

Only Booking/Release officers are authorized to book or release an inmate/detainee in or out of the facility. The Booking/Release area is the designated area for all processing inmates/detainees that are to be booked and/or released. No person shall be detained in the holding cells, detention cells and the padded room for more than eight hours. The Booking/Release area shall be staffed twenty-four hours a day and have the following readily available:

- Secure holding cells for inmates/detainees being processed, with sitting capacity of the holding cell.
- Drinking water available on site.
- Shower and toilets.
- Property storage for inmates/detainees property.
- Telephone for inmates/detainees to make legal or other calls upon initial confinement.
- Computers for Booking/Release process.
- Sally port entrance to ensure security and safety.

1

A. **Initial Processing**

1. Any arresting agency to drop off any person for confinement, must first secure their firearms in the gun lockers located in the vehicle sally port prior to entering the intake entrance into the Booking/Release area. The Booking/Release officer will properly identify the transporting officer before admitting the officer and his/her arrestee into the main entrance. In the event that the transporting officer fails to provide any identification or credential requested by the Booking/Release officer, he/she may be denied entry.

2. If the inmate or detainee is being transferred from another facility, the Booking/Release officer will obtain any file or medical record from the transporting officer.

3. Persons with injury will not be accepted. The transporting officer will be informed that medical attention is to be provided prior to the person being confined. Medical form and/or report must be provided from the attending physician stating that the person has been examined and/or treated and is fit for detention. Any form and/or report obtained will be attached to the booking forms for record and filing. If the person to be confined shows clear signs of mental illness, he/she will not be taken to CHC for evaluation.

4. The transporting officer is required to log all necessary information pertaining to the person to be confined. He/she is also required to furnish any legal documents such as court order, arrest warrant, parole or probation revocation warrant, immigration warrant, federal detainer, or judgment and commitment order if any. The Booking/Release officer will then verify to ensure the legality of the document and for any discrepancy; the Booking/Release officer will then sign any detainer forms or receipts and retain a copy for file. A registered booking number will be assigned for each person that is booked.

5. Upon obtaining all needed information and any legal documents, the Booking/Release officer will then conduct a preliminary search.

6. The Booking/Release officer will ensure that no person under the age of eighteen is committed unless the person is committed with a court order.

7. Constant supervision will be conducted to all inmates/detainees being housed in the holding cell who are awaiting booking and classification.

B. **Admission of Uncooperative Individuals**

1. Any person brought in for confinement and is under the influence of drug and/or alcohol will be searched thoroughly then will be housed in the holding cell, constant and direct supervision will be maintained at all times to ensure the individual's safety.

2. In the event that the person becomes too aggressive and possibilities are that he/she may hurt them self intentionally, he/she will be transferred to the padded

2

room to minimize any injury. Constant supervision will be conducted to any person being placed in the padded room.

3. In the event that a restraining device is needed for an aggressive person, the shift commander will assess the situation and make the final decision. In the event that restraining device is applied, a log entry will be required as well as an incident report. Constant supervision will be applied to the person in restraints, and shall not be restrained for more than is necessary.

4. The person will be transferred back to the holding cell when he/she becomes less aggressive and shows signs of normal behavior.

### C. Court Commitment Orders

1. To ensure that no citizen is detained unlawfully, no individual will be accepted into custody without documented legal authority.

2. Individuals sentenced by the court must provide a commitment order and a legal identification prior to acceptance into custody.

3. No juvenile will be accepted into custody unless it is a court issued order.

4. Initial process applies to all court commitment orders. Any person is required to go through the formal booking process when committed by the court.

### D. Acceptance of Custody

1. The Booking/Release officer will safely and securely accept custody of individuals once proper authority, valid documents and medical clearance have been established. All restraining devices will be returned to the transporting/arresting agency.

2. Individuals with court commitment orders will be accepted when commitment order and legal identification are produced.

3. Any person detained under probable cause arrest, criminal/civil warrants, bench warrant, immigration warrant, probation/parole warrants and federal detainer are required to undergo a Rule 5 hear (Initial Appearance with the court.)

### E. Searches

1. Thorough searches are very critical to ensure the safety and security of the facility.

2. Initial search will be conducted in the search/transfer room.

3. The Booking/Release officer will instruct the individual to remove all personal property on him/her, including outer wear such as cap, coat, gloves, shoes, belt, and/or jewelry, etc.

3

4. The Booking/Release officer will search the individual using a hand-held metal detector. Any object detected will be removed and searched thoroughly.

5. After searching the individual with a hand-held metal detector, a pat-down search will be conducted.

6. Upon completion of both searches, the Booking/Release officer will then conduct a strip search on the individual for any contraband, weapon, tattoos and/or injury.

7. Any contraband or weapon found on the individual will be confiscated for evidence or disposal.

8. Confiscated property shall be documented stating the disposition of the property, if contraband is to be disposed, another officer will witness the contraband to be disposed.

9. Before proceeding to the booking process, the individual will be searched by a walk through metal detector.

### F. Booking

1. When processing inmates/detainees, there must be at least two officers involved. Should an additional officer be needed, the duty officer must request from the Booking/Release Sergeant for assistance.

2. The Booking/Release officer will complete all booking form by asking the individual biographical questions and other pertinent information.

3. In the event that the individual cannot be booked due to language barrier, the Booking/Release officer will notify the Booking/Release Sergeant of the situation.

4. The Booking/Release Sergeant must seek the assistance of various government agencies for a designated translator–government agencies such as the Department of Public Safety, the Immigration Division, Office of the Attorney General, the Superior Court, and/or any other agency.

### G. Photograph and Fingerprints

1. Identification is a critical part of the booking process. All newly admitted individuals will be photographed from the front and side view positions.

2. All distinguishing marks will be photographed and recorded.

3. A complete set of fingerprints will be taken using a fingerprint card. The fingerprints must be clear and legible, and the form must be accurately filled-in and signed by both, the person being fingerprinted and the Booking/Release officer taking the fingerprints.

**H. Other Identifiers**

Identifying marks and/or unusual physical characteristics will be recorded, which will include, but not limited to, height, weight, visual examination of scars, notation of physical deformities, and description of any tattoos.

**I. Personal Property**

1. The Booking/Release officer and the inmate/detainee will jointly inventory all personal property.

2. All personal properties will be recorded on the Personal Property form describing each item in detail.

3. The inmate/detainee will initial his/her name on each property recorded that will be kept for storage.

4. A copy of the Personal Property form will be given to the inmate/detainee as a receipt.

5. Perishable food items and open beverage will be disposed.

6. Any individual to be detained for more than 24 hours will be informed of personal properties authorized in the facility. Arrangements will be made for all other personal properties to be returned to the individual's family member.

7. For inmate/detainee property storage, refer to policy on Inmate/Detainee Property Storage.

**J. Medical Screening**

1. All individual admitted into the facility to be detained will under-go a mandatory health screening.

2. If an inmate/detainee has any medical problem such as heart disease, diabetes, epilepsy, communicable disease, HIV positive, pregnancy, or any chronic, potentially life-threatening illness, he/she must be referred to the DOC nurse and/or the Commonwealth Health Center (CHC).

3. Any inmate/detainee known to have or discover to have any communicable disease will be examined immediately by the Department of Corrections (DOC) nurse or be taken to Commonwealth Health Center (CHC).

4. Any inmate/detainee with mental illness will be referred to the Staff Psychiatrist to determine type of treatment.

5. New inmate/detainee will be separated from the general population until completion of all medical screening.

6. All medical and mental health records are confidential; all will be filed separately, and will be stored in a DOC Nurse's Office. Only the Commissioner of Corrections and/or the Director of Corrections may authorize release of any medical information, with the written consent of the inmate/detainee.

### K. Notification

1. A written entry shall be made on the routine log sheet as to the name of the standby representative notified, date and time informed and what actions are to be taken on the individual.

2. If the standby representative does not respond or cannot be located, every effort will be made to contact someone from the arresting agency.

3. All attempts made to contact a representative from the arresting agency will be recorded on the Routine Log Sheet.

4. Individuals who are not afforded a Rule 5 Initial Appearance within twenty-four (24) hours, will be released from custody after all attempts have been made to notify the arresting agency.

### L. Initial Classification

1. Any inmate/detainee to be moved into any housing unit must be classified prior to being moved into any housing unit.

2. Classification will determine custody level and housing assignment.

3. Inmates/Detainees will be separated from the general population until the classification process has been completed. They will be held in the designated intake area, or special housing if indicated by the initial classification process.

4. All classification forms will be properly and completely filled-in.

5. Refer to Classification Policy and Procedure.

### M. Visitation List

1. Inmates/Detainees are encouraged to visit with family members and friends.
2. Each inmate/detainee is required to submit a list of possible visitors.
3. The list will be reviewed by the Classification Section for recommendation and approved by the Director.
4. The inmate/detainee and visitor will be notified when visitation request is approved. Visitors not approved will be notified of the reasons for non-approval and will not be allowed to enter the facility.

5. Visitors denied visitation may submit reasons for approval to the Director for reconsideration. If the potential visitor is not satisfied with the Director's decision, the visitor may appeal the decision to the Commissioner.

### N. Inmate/Detainee Orientation

1. The Booking/Release officer will conduct orientation on all admitted.

2. Explain DOC rules and regulation using the inmate handbook.

3. List available programs and eligibility criteria.

4. Explain any testing and examination that are required.

5. Provide a copy of the inmate/detainee handbook. A form will be signed by the inmate/detainee attesting that orientation was conducted.

6. Refer to the Inmate/Detainee Orientation policy and procedure.

### O. Phone Calls

1. After completion of the booking process, newly arrested individuals may make necessary phone calls under the supervision of the Booking/Release Officer.

2. These calls may be made from the telephone in the Booking/Release Area. A telephone directory will be provided.

3. These calls may be made to an attorney, employer, relative, friend, or to another person that is arranging his/her bail.

4. At no time will the individual be permitted to call victims and/or witnesses involved.

5. All phone calls except attorney call made by the individual will be recorded through the inmate/detainee telephone system.

### P. Issuance of Clothing for New Commitments

1. Individuals that will be detained for more than eight (8) hours will be issued clothing.

2. Clothing issued will consist of three T-shirts, three pants, three pairs of socks, one pair of slipper, and three brassieres for females

3. All items issued will be recorded on the Supply Issuance Sheet and attached to his/her file.

Q. **Personal Hygiene**

1. Individuals detained for more than eight (8) hours will be issued personal hygiene supplies.

2. Personal hygiene supplies will consist of one toothbrush, one tube of toothpaste, one bar of body soap, one bottle of shampoo, one washrags, one razor, sanitary napkins for females, and two towels.

3. All items issued will be recorded on the Supply Issuance Sheet and attached to his/her file.

R. **Release of Inmate/Detainee**

1. When the inmate/detainee is to be released from custody, all of his/her personal property kept in storage must be returned.

2. The inmate/detainee will acknowledge receipt of his/her property by signing off on the Personal Property Sheet and must be attached back to his/her file.

3. The date and time of release must be entered in his/her Personal Property Sheet.

4. Prior to releasing the inmate/detainee from custody, the Booking/Release officer will review all documents relating to the inmate/detainee, including court documents to ensure that the inmate/detainee is being released in accordance to the condition of the court, and the rules and regulation of the DOC.

5. The Booking/Release Sergeant will review all documents to ensure that all forms are filled-in properly, all property of the inmate/detainee is accounted for and returned, and the commitment order with respect to the length of incarceration is completed.

Reviewed By: _____   12/17/07
Gregory F. Castro                                                   Date
Director of Corrections

Approved By: _____   12/17/07
Lino S. Tenorio                                                     Date
Commissioner of Corrections