


**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

**DEPARTMENT OF CORRECTIONS**
Vicente Taman Seman Building
P.O. Box 506506, Saipan, MP 96950
Telephone: (670) 664-9061 Facsimile: (670) 664-9515

| Part | Section | Title | Policy No. | Review Date: |
|---|---|---|---|---|
| Institutional Services | Health Care | Suicide Prevention | 4.5.24 | |
| **ACA Standard** | 3-ALDF-4E-34  Suicide Prevention and Intervention Programs ||||
| **Consent Decree** | Paragraph 54 Develop Facility Policies and Procedures ||||

### I. PURPOSE

To describe the Department of Corrections (DOC) suicide prevention program.

### II. POLICY

It is the policy of the DOC to protect inmates/detainees from self-destruction and to assist in providing proper treatment to those inmates/detainees who have self-destructive potentials. Therefore, the purpose of this policy is to establish procedures and guidelines to aid corrections officers in identifying inmate/detainee needing suicidal intervention so as to prevent suicide or suicidal attempts.

### III. DEFINITIONS

1. **Acute** - Having a rapid onset and following a short but severe course.

2. **Administrative Review** - Is a policy that requires a formal post-suicide investigation be conducted by a team comprise of mental health staff, correction officers, DOC senior officers and medical staff. The findings are forwarded to the Director of Correction for disposition.

3. **Chronic** - Lasting for a long period of time or marked by frequent recurrence, as certain diseases.

4. **Continuous Observation** - Is a continuous and uninterrupted observation of an inmate/detainee who is actively suicidal, either by threatening or engaging suicide acts.

5. **Hallucination** - False or distorted perception of objects or events with a compelling sense of their reality, usually resulting from a mental disorder or as a response to a drug. A false or mistaken idea; a delusion.

1

6. **Initial Screening** - Is a process where an interview is conducted to evaluate the inmate's stability, program needs, mental and physical conditions, counseling needs and assesses suicide potential.

7. **Mechanical Restraint** - Is a device such as handcuff, straight jacket, belly chain and leg shackle to restrain a person to prevent him/her from harming himself/herself.

8. **Suicide** - The act or an instance of intentionally killing oneself.

9. **Suicide Watch** - Is defined as supervisory precautionary measures for suicidal inmates/detainees that require frequent observation.

IV. **Assessment of Suicide Risk**

A. The following criteria will be used as a guide to assist corrections officers to establish a plan of prevention and treatment to inmate/detainee that exhibit suicide potential:

1. **Suicide Plan:** The possibility for suicide occurring is greater when the inmate/detainee has a well organized plan and the means to accomplish it is available.

2. **Prior Suicide Behavior:** Inmate/detainee who has one or more prior attempts to commit suicide or has a history of repeated threats and depression has a greater chance of committing suicide.

3. **Stress:** An inmate/detainee who is susceptible to stress from increased pressures has potential for suicide such as but not limited to the following:

    a. Difficulties in coping with legal problems.
    b. The lost of a loved one through death or divorce.
    c. The loss of employment.
    d. Anniversary of incarceration date or offense.
    e. Serious illnesses or diagnosis of terminal illness.
    f. Threats or perceived threats from peers.
    g. Sexual victimization.
    h. Placement in isolation or segregation.
    i. Additional sentence or parole is denied.
    j. Cell restriction.
    k. Planned transfer to another institution.

      l. Severe guilt or shame over offense.

      m. Recent excessive drinking and/or use of drugs.

      n. Current mental illness.

      o. The first 24 hours of confinement.

      p. Intoxication/withdrawal.

      q. Waiting for trial.

      r. Sentencing.

      s. Impending release.

      t. Holidays.

      u. Darkness.

      v. Decreased staff supervision.

      w. Bad news of any kind.

      x. Lost of self-esteem.

      y. Excessive self-blaming.

      z. Recent suicide of another inmate.

      aa. Removal of visitors from visiting list.

4. **Recent suicide in the community.**

5. **Prior suicide behavior by family members:** The inmate/detainee has a greater potential to commit suicide if a parent, spouse or close relative has attempted or committed suicide.

6. **Personal Resources:** The potential for suicide is greater if the inmate/detainee has no family or friends; family and/or friends are unwilling to help; or family and/or friends give the impression that the inmate/detainee is not in need of help.

7. **Acute vs. Chronic Aspects:** The potential for suicide is greater when there is sudden specific symptoms and/or recurrent or reappearance of similar symptoms.

8. **Medical Status:** An inmate/detainee who has chronic or frequent recurrent illness especially where it alters the body image or life style has a greater potential for suicide.

C. **Symptoms:** An inmate/detainee has the potential for suicide if one or more of the following symptoms is being experienced especially during the time of arrest, during transport to jail, at booking/intake, and during confinement:

3

1. Despondency or having lost all or nearly all hope.

2. Talks about or threatens suicide; makes statements that are death related, e.g., "I've had it. I can't take it anymore."

3. Apathy or lack of emotional responsiveness.

4. Sudden elevated mood.

5. Any change from the individual's sleep pattern, either a decrease or increase in sleep.

6. An increase or decrease in eating patterns accompanied by an increase or decrease in weight.

7. Social withdrawal.

8. General attitude of physical and emotional exhaustion.

9. Delusions or something accepted as true that is actually false, such as paranoid delusions (thinks that someone is out to get him/her or hurt him/her) or grandiose delusions (thinks they are someone whom they are not).

10. Auditory and visual hallucinations.

D. **Facts of Suicide:** Correction officers should not have preconceptions about suicide. The following are facts about suicide that correction officers shall be aware of:

1. Most prison/jail suicides have warning signs.

2. Most people who commit suicide have made either direct or indirect statements indicating their suicidal intentions.

3. Any individual with a history of one or more prior suicide attempts is at much greater risk than those who have never made an attempt.

4. Most suicidal people have mixed feelings about killing themselves. They are not sure whether to live or die, but most want to be saved.

5. Showing an interest in a person's welfare can prevent potential suicide.

6. An individual who is extremely sad does not necessarily mean that he/she is mentally ill.

7. The prison/jail environment causes stress to an individual and therefore the potential for suicide is greater than the general population.

8. The inmate/detainee who threatens or attempts self-injury as a motive to gain attention or achieve an objective may still be a suicidal risk. The following guidelines are recommended on manipulative inmate/detainee who threaten suicide or engage in self-injurious behavior:

   a. Increase supervision to discourage manipulative behavior.

   b. Avoid isolation as a response to manipulative behavior - it could escalate the behavior and result in more serious gestures.

   c. Observe and document inmate behavior.

   d. Refer the inmate/detainee to mental health personnel for evaluation.

   e. Do not use the term "manipulation" in written documentation because it may be used by other staff involved in the inmate's care.

D. **Screening/Assessment**

   1. **Initial Screening:** An inmate/detainee can attempt suicide at any point during incarceration. Although the factors are not completely reliable in predicting suicide, you should still look for the following characteristics such as family history of suicide, lack of social support system, and recent death in the family and those listed above have been identified to be related to suicide. The key to identify inmate/detainee potential suicide behavior is through a thorough inquiry during the initial intake screening process.

   2. **Values and benefits of initial screening:** The following are proven benefits:

      a. Potentially suicidal inmates are identified and prevention methods are employed.

      b. Traumas, possible illness and infectious diseases are detected.

      c. Possible drug and alcohol abuse and withdrawal can be assessed.

      d. Early evaluation and treatment of chronic and acute mental illnesses can be effected.

      f. Medication use is determined.

      g. Legal liability protection.

E. **Intake/Screening Worksheet:** All inmates/detainees that are legally detained shall be interviewed using the Intake/Screening worksheet upon admission to the facility for administrative purposes, program needs, needing treatment for drug

and/or alcohol abuse, counseling, housing, and especially to identify potential suicide behavior. The following are recommended during the interview process:

1. The staff shall observe the inmate/detainee behavior, speech, actions, attitudes and state of mind.

2. Look for scars (neck, wrist and forearms) from previous suicide attempts.

3. Traumas or bruises, color and condition of the skin.

4. Visible signs of drug or alcohol use and withdrawal.

5. The staff is encouraged to ask follow-up questions to elicit additional information.

6. Staff should never take lightly any suicidal threats, attempts, or hints from other inmates about a potentially suicidal inmate/detainee.

F. **Referral:** If the staff notice or there is an indication of potential suicide by an inmate/detainee after working hours, the shift supervisor will call CHC emergency room and asked for the psychiatrist on call. The psychiatrist on call will be briefed on the condition of the individual and will determine what actions will be taken. During regular working hours, the shift supervisor will call the Division of Mental Health and Social Services (DMHSS) at 323-6560 for evaluation and treatment. The escorting officer will assist the inmate/detainee fill out Patient Registration Form as required.

1. The shift supervisor will ensure that the transporting officer follow the Escorting and Transporting Procedures.

2. If a physician, psychiatrist or psychologist at DMHSS determines that the inmate/detainee is a danger to self and/or others, the physician shall order a watch with a recommendation for a specific level of observation. The watch may only be reduced or terminated by the ordering physician. The attending physician will determine the treatment that will be provided.

3. In the event the attending physician determines that the inmate/detainee will be admitted into the hospital for further evaluation and treatment, the escorting officer will inform the shift supervisor at DOC and a security officer will be provided throughout the inmate's/detainee's hospital admission.

4. In the event that the attending physician determines that the inmate/detainee is not a danger to him/her and is fit to be incarcerated, the attending physician shall provide a written recommendations on the level of observation if any. The attending physician's recommendations shall be strictly followed.

G. **Levels of Observation:** The different levels of observation require different types of restrictions. In all cases, the least restrictive measures shall be determined by the attending physician. The following procedures shall be employed:

1. **Constant Watch:** This is the most restrictive watch and requires constant visual contact while the person is awake, with visual checks every five to ten minutes while the person is asleep in a safe environment. Toileting and bathing may or may not be visually supervised, depending on the person's mood at the time. If visually unsupervised, staff should be standing close by with the door slightly ajar. Observations by mental health staff shall be recorded.

2. **Close Watch:** This is less restrictive than constant. Visual checks are made on an irregular schedule that does not develop a pattern but at least every five minutes while awake and every 15 minutes while asleep. The room shall be searched for removal of potentially harmful objects such as glass, pins, pencils, pens, matches, plastic bags, and belt. Electrical outlets will be shut off and breakable glass shall be removed.

3. **Regular Watch:** This is the least restrictive level of observation and is usually the last step prior to release from the observation. Visual checks shall be made in such a fashion that the inmate/detainee is not aware of a pattern developing, at least every 10 minutes while awake and every 30 minutes while asleep. Bed and linen, and writing materials may be allowed but should be removed when not in use. Toileting and bathing may be done as in the normal routine. All observations will be recorded in a log.

4. The housing unit or cell should be nearly suicide-proof as possible. Protrusions of any kind that would enable the inmate/detainee to hang him/herself shall be removed.

5. The staff will explain to the inmate/detainee reasons why he/she is being placed in administrative segregation.

6. Staff safety shall be considered in deciding where to conduct the observation.

7. Staff shall not enter a cell until sufficient staff is available to handle the patient.

8. Except where the inmate/detainee will destroy an item or use it to induce self-injury, he/she shall be provided with basic personal hygiene and clothing items commensurate to the inmate/detainee current behavior.

9. If it is determined by the mental health staff that the inmate's clothing be removed to prevent self-harm, then a paper gown and/or blankets of paper will be provided. Experts all agreed that stripping inmate/detainee of his/her

7

clothes is degrading and worsens feelings of depression, it is recommended that constant or close supervision is more appropriate.

H. **Use of Mechanical and Chemical Restraints:** Restraints shall be used only for medical purposes, and to protect mentally disordered inmates/detainees from harming themselves or others. Restraints shall be used only when less restrictive measures such as counseling is nonproductive. Restraints are employed for the minimal amount of time that is necessary and not as punitive measure. The following procedures shall be employed:

1. The order to use restraints shall be under the direction of the attending physician.

2. The use of chemicals such as mace to subdue the inmate/detainee will only be utilized if all other efforts are exhausted. The shift supervisor must approve the use of mace on the individual.

3. Prior to the use of mace or other chemical agents, the individual against whom it is to be directed shall be warned that chemical agents may be used.

4. Mace will be used when the individual threatens bodily harm to himself/herself, other inmate/detainee, or correction officers.

5. Precautionary measures shall be taken to limit the noxious side effects of the chemical agents.

6. If circumstances allow, ventilation devices, such as fans and windows, shall be readied prior to the use of the mace or other chemical agents. The purpose of this procedure is to minimize the effect of the chemical agents upon other individuals located in the area.

7. When time and circumstances permit, individuals other than those against whom the chemical are directed shall be removed from the area before the chemical agents are used.

I. **Suicide Attempt:** Following a suicide attempt, the staff's quick intervention and actions will determine whether the victim will survive. The following procedures shall be employed:

1. The staff that discovers an inmate/detainee attempting to commit suicide shall survey the scene to ensure that the emergency is real; report to the shift supervisor immediately and begin standard first aid and/or cardiopulmonary resuscitation (CPR).

2. The shift supervisor will deploy sufficient personnel to the area to assist.

3. The shift supervisor will radio or telephone the Emergency Medical Services (EMS) personnel immediately for assistance. The CHC emergency room will also be notified about the situation and request for immediate assistance at DOC.

4. The shift supervisor will notify the Director of Correction, Assistant Chief of Correction and Operation's Captain. The shift supervisor will also notify DPS central, Criminal Investigation Bureau and Public Information Officer.

5. If the victim is hanging, the first officer shall immediately enter the cell and remove the noose from the victim. Life saving measures shall be initiated at this time. Check for vital signs. Report the results to the shift supervisor.

6. **Checking the Victim:** The first officer shall determine if the victim is conscious. The following procedures shall be employed:

**NOTE:** The body requires oxygen to survive. A person who is unconscious will soon die if breathing stops. If breathing stops, the heart will soon stop beating. Within 4 to 6 minutes and if the brain does not receive oxygen, brain damage is possible. Within 6 to 10 minutes and if the brain does not receive oxygen, brain damage is likely. Over 10 minutes, irreversible brain damage is certain.

   a. Tap the victim on one shoulder.

   b. If the victim does not respond to you, assume he or she is unconscious.

   c. The first officer shall check if the victim is breathing. Look, listen, and feel for any signs of breathing for about five (5) seconds.

   d. If the victim is not breathing or you can't tell, position the victim on his/her back, while supporting head and neck. Check and clear the airway for any obstruction.

   e. Tilt head back and lift chin.

   f. Look, listen, and feel for breathing for about 5 seconds.

   g. If the victim is not breathing, give two (2) slow breaths through the mouth.

   h. Check pulse for 5 to 10 seconds.

   i. Check for severe bleeding.

   j. Give care for the conditions you find.

7. Secure all inmates/detainees except for one or two inmates/detainees who may help to either hold up the body or remove the noose.

8. Officers shall assist in providing first aid and/or CPR.

9. Only a physician or other professional as designated by CNMI law can pronounce an individual dead. It is for this reason that first aid and/or CPR must continue until relieved by a qualified personnel.

10. Officers at the scene shall protect and preserve the scene until the investigators and other personnel arrive to process the scene.

11. All officers having knowledge of the incident shall submit a written report to the shift supervisor prior to securing at the end of the shift.

J. **Cardiopulmonary Resuscitation (CPR):** When the heart stops beating or beats too poorly to circulate blood properly, it is called cardiac arrest. Cardiac arrest can occur from choking. A person in cardiac arrest is unconscious, is not breathing, and has no pulse. Even though a victim is not breathing and has no pulse, the cells of the brain and of other important organs continue to live for a short time - until the oxygen in the blood is used up. Such a victim needs CPR at once. CPR is a combination of chest compression and rescue breathing. The following procedures shall be employed if the victim is not breathing and has no pulse:

  a. Find hand position on breastbone.

  b. Position your shoulders over your hands. Compress chest fifteen (15) times.

  c. Give two (2) slow breaths.

  d. Do three (3) more sets of fifteen (15) compressions and two (2) breaths.

  e. Recheck pulse and breathing for about five (5) seconds.

  f. If there is no pulse, continue sets of fifteen (15) compressions and two (2) breaths.

  g. These procedures shall be continued until EMS personnel arrive.

K. Intervention with surviving inmates is also important to reduce the negative impact of the suicide and to help prevent further suicides (suicide attempts generally go up after other attempts/suicides).

  1. Observe other inmates for risk factors (for example suicidal speech, hopelessness, withdrawal, isolation, sadness, fatigue) listed earlier.

2. Hold group and/or individual discussions aimed at debriefing and identifying inmates/detainees affected by suicide and aimed at establishing hope/constructive action.

3. Refer individual to DMHSS who show increased risk factors for suicide.

4. DOC personnel and inmates/detainees SHOULD NOT encourage glorifying the act of suicide or the victim of suicide. Do not focus on the "courage" of the act, rather on the courage to live.

L. Assess the impact of the suicide on DOC personnel:

1. Corrections staff can be negatively affected by inmate/detainee suicide.

2. Be aware of feelings of self blame, guilt or constantly thinking about the suicide and/or victim. Also look for signs/risk factors listed in Section E. Notify your supervisor or DMHSS.

3. DOC personnel should meet to debrief and to talk about the strategies for dealing with inmates/detainees.

**M. Post Suicide Administrative Review:**

1. An administrative review is a critical component of suicide prevention. Its purpose is to review the circumstances surrounding the incident; review of prison procedures relevant to the incident; a synopsis of all relevant training received by involved staff; a review of pertinent medical and mental health services involving the victim; and recommendations for changes in policy, training, physical plant, medical or mental health, and operational procedures.

2. The review will involve physicians, nurses, and others to determine if there is a pattern of symptoms that might have resulted in earlier diagnosis and intervention, and to determine if appropriate interventions were taken.

3. Appropriate information, not the confidential report, will be shared with staff and training coordinator so that all staff will recognize and prevent suicide.

Prepared By: _____     11-20-07
            Maj. John M. Ayuyu                Date

Reviewed By: _____     11/20/04
             Gregory F. Castro                Date
             Director of Corrections

Approved By: _____     11/20/07
             Lino S. Tenorio                  Date
             Commissioner of Corrections

11