THOMAS E. PEREZ
Assistant Attorney General
ROY L. AUSTIN
Deputy Assistant Attorney General
JONATHAN M. SMITH
Chief
SHELLEY R. JACKSON
Deputy Chief
JEFFREY R. MURRAY
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
601 D. Street, N.W.
Washington, D.C.  20004
PHONE:  (202) 353-9269
FAX:  (202) 514-0212

ALICIA A.G. LIMTIACO
United States Attorney
MIKEL SCWHAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam  96910
PHONE:  (671) 472-7332
FAX:  (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 99-0017 |
| Plaintiff, | |
| vs. | **JOINT REQUEST FOR STATUS CONFERENCE** |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, et. al., | |
| Defendants. | |

Plaintiff, United States of America ("United States"), and Defendants, the Commonwealth of the Northern Mariana Islands, the Governor of the Northern Mariana Islands, the Commissioner of the Department of Corrections,[1] and the Secretary of the Department of Community and Cultural Affairs (collectively, "the Commonwealth"), respectfully request that the Court schedule a status conference in the above-captioned matter. In support of this motion, the parties represent as follows:

1. The Consent Decree (Document #4, 2/25/1999), regarding conditions of confinement in facilities operated by the Commonwealth of the Northern Mariana Islands' Department of Corrections ("DOC") has been in effect since 1999. The Consent Decree broadly enjoins the Commonwealth from depriving persons confined by the DOC of the rights, privileges, and immunities secured and protected by the Constitution of the United States. (Paragraph 8). The cooperative efforts of the parties have resulted in compliance with many of the Consent Decree's provisions. These accomplishments were last discussed with the Court during a status conference held on October 6, 2009 (Document #40, 10/6/2009).

2. The parties are working to resolve two outstanding concerns the United States has regarding the Commonwealth's compliance with the Consent Decree: medical care for inmates and the safety of juvenile detainees. With some guidance from the Court, the parties believe we can resolve these two issues and any outstanding issues that the Court may have, and move to terminate the Consent Decree in the near future.

---

[1] The Commissioner of Corrections succeeded the Commissioner of Public Safety, the Secretary of Labor, and the Secretary of Community and Cultural Affairs as the official in charge of the detention facilities that are the subject of the Consent Decree.

1   3. First, Section V of the Consent Decree details specific steps the Commonwealth must
2      take to ensure it does not deprive inmates of adequate medical care. Those steps
3      include conducting specific health screenings and assessments to identify any medical
4      or mental health needs (Paragraph 49); ensuring that medication is administered only
5      by a nurse (Paragraph 50) or other appropriately trained individual, and training all
6      staff members in the prevention of communicable diseases (Paragraph 51).
7   4. For most of the duration of the Consent Decree, the DOC has relied on the
8      Department of Public Health ("DPH") for inmates' medical care, which was provided
9      through the Commonwealth Health Center. In 2011, the Commonwealth took the
10     Commonwealth Health Center out of DPH's control and spun it off into an
11     autonomous, self-sustaining entity known as the Commonwealth Healthcare
12     Corporation ("CHC"). Based upon news reports that the new CHC has been
13     challenged with continuing budgetary shortfalls that have affected its ability to
14     deliver medical services in general, the United States is concerned that CHC's
15     budgetary problems may be adversely affecting inmates' access to necessary medical
16     care.
17  5. The Commonwealth maintains that DOC detainees are provided with adequate
18     medical care despite CHC's ongoing financial difficulties. CHC continues to honor
19     the 1999, 2003, 2006, and 2009 memoranda of understanding between the between
20     the Department of Public Health and the DOC establishing the framework for
21     inmates' medical care. As evidence of such, the Commonwealth notes that there is a
23     full-time CHC nurse stationed at DOC, and a CHC physician provides medical care
24     on-site on a weekly basis. The DOC intends to submit additional documents to

1 demonstrate compliance with the medical care requirements under the Consent
2 Decree.
3 6. Recently, the Board of CHC threatened to terminate the provision of medical
4 services for DOC inmates. To address this issue, the Governor's budget submission
5 for Fiscal Year 2014 will include an appropriation of $240,000 to cover the costs of
6 medical services provided to DOC inmates.
7 7. Second, the United States has concerns about the safety of juvenile detainees at the
8 Kagman Juvenile Detention Unit ("JDU"), under Section VI of the Consent Decree
9 addressing security and protecting from harm.
10 8. In June of 2010, Tyron Fitial was arrested on federal charges of sexual misconduct
11 and related offenses he committed as an officer at the Kagman Juvenile Detention
12 Unit ("JDU"). Fitial accepted a plea deal with the United States and was sentenced to
13 15 years in prison in June of 2012. The United States would like further assurance
14 that policies are in place to deter another Fitial incident.
15 9. Since the Fitial incident, the Commonwealth has worked to improve conditions at
16 JDU, including reassigning personnel and transferring its operational responsibility
17 from the Department of Community and Cultural Affairs to DOC in May 2011. In
18 addition, the Commonwealth expedited the processing of juvenile detainees through
19 JDU, such that most detainees are released in a matter of a few hours, rather than
20 days. This has significantly reduced the population at JDU, which currently has only
21 one long-term detainee, and three who will be released within the next five months.
23 10. To help ensure the sustainability of these reforms, the United States has encouraged
24 the Commonwealth to review and revise JDU's written policies so that future changes

in leadership or staffing will not allow for a lapse to the deficient operational practices that allowed the Fitial incident to occur.  The Commonwealth has provided two revised policies for review by the United States which address interactions between staff members and juveniles of the opposite sex and JDU's levels and privileges system.  The Commonwealth has also increased staffing at the JDU—four new employees have been hired since October 2012—and plans to further increase staffing.  The United States believes these are important foundations upon which the Commonwealth should continue to build permanent, sustainable practices that will remain in place beyond the tenure of JDU's current leadership. The parties are working together to determine what steps need to be taken to address this concern.

So that both Parties may fully apprise the Court of current conditions in DOC and to help establish a plan and schedule for the Commonwealth to reach full compliance with the Consent Decree and ultimately terminate the Consent Decree, the parties respectfully request that the Court schedule a status conference.  In addition, the United States requests that the Court allow attorneys from the Civil Rights Division in Washington, DC to participate by telephone.

RESPECTFULLY SUBMITTED: this 25th day of April 2013.

**For the United States:**

THOMAS E. PEREZ
Assistant Attorney General
United States Department of Justice
Civil Rights Division

By:  /s/ Jeffrey R. Murray
JONATHAN M. SMITH
Chief
SHELLEY R. JACKSON
Deputy Chief
JEFFREY R. MURRAY
Trial Attorney

**For the Commonwealth Defendants:**

/s/ Teresita J. Sablan
Teresita J. Sablan (T0089)
Assistant Attorney General