JOCELYN SAMUELS
Acting Assistant Attorney General
ROY L. AUSTIN
Deputy Assistant Attorney General
JONATHAN M. SMITH
Chief
SHELLEY R. JACKSON
Deputy Chief
JEFFREY R. MURRAY
Trial Attorney
Special Litigation Section
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave., NW
Washington, D.C. 20530
PHONE: (202) 353-9269
FAX: (202) 514-0212

ALICIA A.G. LIMTIACO
United States Attorney
MIKEL SCWHAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

*Attorneys for the United States of America*

OFFICE OF THE ATTORNEY GENERAL
Joey Patrick San Nicolas
Attorney General

Teresita J. Sablan (F0480)
Assistant Attorney General
Hon. Juan A. Sablan Mem. Bldg., 2nd Floor
Saipan, MP 96950-8907
Tel: (670)-664-2341
Fax: (670)-664-2349
e-mail: sablan.teresita@gmail.com

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>Plaintiff,<br>v.<br><br>**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS** et al.,<br><br>Defendants. | CIVIL CASE No. 99-00017<br><br>**JOINT MOTION TO TERMINATE CONSENT DECREE**<br><br>Judge: Hon. Ramona V. Manglona<br>Date: January 30, 2014<br>Time: 8:30 a.m. |

COMES NOW the Defendants, the Commonwealth of the Northern Mariana Islands, the Governor of the Northern Mariana Islands, the Commissioner of the Department of Corrections ("DOC"),[1] and the Secretary of the Department of Community and Cultural Affairs (collectively, "the Commonwealth"), through undersigned counsel, and the Plaintiff United States of America, through undersigned counsel, to respectfully submit this joint motion to terminate the Consent Decree.

**I.  BACKGROUND**

In 1998, the United States investigated the Commonwealth's adult and juvenile detention facilities. *See* Consent Decree at 1–2 ¶ 1, ECF No. 4. As detailed in its August 5, 1998 findings letter, the United States observed the following: staff members were not trained for response in a fire emergency; facilities lacked fire alarms, smoke detectors, sprinklers, and emergency generators; cells were keyed with individual locks, which greatly increased risk in the event of fire; emergency exits were not marked; many cells lacked running water; toilets would not flush; shower areas were covered in mold and mildew; there was poor ventilation and no medical screening, increasing the risk of transmitting infectious diseases like tuberculosis; facilities were

---

[1] The Commissioner of Corrections succeeded the Commissioner of Public Safety, the Secretary of Labor, and the Secretary of Community and Cultural Affairs as the official in charge of the detention facilities that are the subject of the Consent Decree.

antiquated, dilapidated and operating at or near their safe capacity; facilities had inadequate perimeter fencing, poor sight lines, and lacked an adequate maximum security housing area; and inmates and detainees roamed freely, increasing the risk of harm from inmate-on-inmate violence and putting staff at an increased risk of harm. Based on its investigation, the United States determined that the conditions of the detention facilities violated the constitutional rights of the persons confined within the facilities. *Id.*

Pursuant to 42 U.S.C. §§ 1997–1997j, the Civil Rights of Institutionalized Persons Act, the United States initiated this action on behalf of those confined persons on February 23, 1999. *See* Complaint, ECF No. 1. Specifically, the United States alleged that the Commonwealth was failing to protect inmates from undue risk of harm by failing to provide adequate supervision, adequate security, adequate classification, adequate medical care, and adequate environmental health, sanitation, and fire safety. *Id.* at 4 ¶ 21. The parties entered into a Stipulation Requesting Entry of Consent Decree, and the Court issued an order entering the Consent Decree on February 25, 1999. *See* ECF Nos. 2, 3.

Since the entry of the Consent Decree, the Commonwealth has addressed the concerns identified in the findings letter and satisfied the requirements of the decree. Some of the major achievements include the following:

- Construction of a new Juvenile Detention Unit ("JDU") on Saipan, ECF No. 24 at 2 ¶ 2;
- Construction of a new adult detention facility on Saipan, ECF No. 31 at 2 ¶ 4;
- Renovation of the Rota and Tinian detention facilities, ECF No. 31 at 4 ¶ 11;
- Development and implementation of policies and procedures, including a including classification system for inmates, ECF Nos. 31-1 to 31-138;
- Implementation of medical screening and provision of medical care for inmates,

3

> ECF Nos. 41-1 at 1–2, 53 at 2 ¶ 2;

- Implementation of fire safety plans and apparatuses, *see e.g.,* ECF Nos. 23-3 (DOC smoke detector and fire extinguisher inspections), 24-10 (JDU fire safety inspections), 24-12 (JDU fire drill log); and

- Increase of staffing at DOC and JDU to ensure adequate supervision to minimize harm to inmates.[2]

Officials from the Department of Justice Civil Rights Division and its consultants inspected DOC facilities in 2001, 2002, 2003, and 2008. Since then, officials from the United States Attorney's Office and other federal officials have continued to visit DOC facilities and have noted significantly improved conditions. Moreover, the Commonwealth has been responsive to the United States' recent concerns about the continued provision of medical care to inmates by the Commonwealth Healthcare Corp. ("CHC"), and the United States is now satisfied by the Commonwealth's representation to the Court that such care will continue unabated.[3]

## II. DISCUSSION

The parties jointly seek to terminate the Consent Decree. Paragraph 72 of the Consent Decree sets forth the requirements and procedure for termination:

> At any time after two (2) years from the date of entry of this Decree, and after substantial compliance has been maintained for no less than one year, the CNMI may move to terminate this Decree. Any motion to terminate must detail all aspects of the Defendants' compliance with each provision of this Decree, supported by affidavits and supporting documentation. The United States shall

---

[2] As of November 19, 2013, the populations at DOC and JDU are 214 and 3, respectively. To supervise these populations, DOC has 43 correctional employees and JDU has 14. Additionally, 35 correctional cadets graduated from the DOC training academy on December 23, 2013; 33 will serve at DOC, and two will serve at JDU

[3] In its October 2013 status report, the Commonwealth stated "the Fiscal Year 2014 Budget includes an appropriation to CHC to cover the costs of medical care for DOC." ECF No. 55 at 1. To clarify, the 2014 Budget Act does not specifically state what portion of the monies provided to CHC must be used for DOC inmates. Rather, the representation was based on the Governor's Budget Proposal and the Legislature's act to allocate a $2 million subsidy to help defray a variety of CHC's costs including care for the Commonwealth's indigent population and inmates at DOC. The parties have discussed this issue, and in light of CHC's continuing commitment to provide medical care to DOC inmates, do not believe that the specific breakdown of CHC's budgetary allocations is necessary to support closure of the Consent Decree.

     have ninety (90) days from receipt of the CNMI's motion to terminate to file its objection(s). In the event the United States objects to termination of this Decree, the Court shall hold a hearing, at which both parties may present evidence, before ruling on the motion to terminate. At the Hearing, the burden shall be on the CNMI to demonstrate that it has fully and faithfully implemented all provisions of this Consent Decree and maintained substantial compliance for at least one year.

Consent Decree at 22–23 ¶ 72, ECF No. 3. The parties stipulate and agree that the Commonwealth has substantially complied with the provisions of the Consent Decree and that the Consent Decree should be terminated.

     First, this joint motion is timely as it has been well beyond two years—it is nearing fifteen years—since the Consent Decree was entered.

     Second, the parties stipulate that the Commonwealth has maintained substantial compliance with the terms of the Consent Decree for at least one year. Termination of a consent decree is appropriate where a party has substantially complied with its terms, and where any deviation from literal compliance has not defeated an essential purpose of the decree. *Jeff D. v. Otter*, 643 F.3d 278, 284 (9th Cir. 2011). The parties entered the Consent Decree to remedy the violations of federal rights alleged in the United States' findings letter and complaint, so as to better ensure the safety and well-being of inmates and detainees in the Commonwealth. *See* Consent Decree at 2-3 ¶ ¶ 1, 5, ECF No. 3. As highlighted in the background, the conditions at and operation of the Commonwealth's detention facilities have improved significantly under the Consent Decree. In addition to the new construction, the Commonwealth developed short-term and long-term plans for operating its correctional facilities. *See* Consent Decree §§ II, VII. The Commonwealth also implemented significant reforms in the areas of fire safety, sanitation, medical care, and security in compliance with those requirements of the Consent Decree. *See id.* §§ III–VI.

     All of these measures have improved the safety of detained individuals. Most had been completed by 2009 and the parties anticipated filing a joint request to terminate the Consent

Decree in 2010, but the revelation of misconduct and successful federal prosecution of former JDU employee Tyron Fitial renewed concerns for the United States regarding whether juveniles at JDU were adequately protected from exploitation by staff, delaying the joint request. ECF Nos. 33 at 2 ¶ 4, 41-1 at 3, 44. In response, the Commonwealth took additional steps to improve conditions at JDU and implemented policies to help deter similar misconduct in the future. ECF Nos. 44 at 4 ¶ 9, 53-5, 55-2, 55-3. With the completion of that work, the parties now agree that the Commonwealth has largely achieved and maintained the Consent Decree's intended reforms for a period greater than one year. In addition, the Commonwealth has made satisfactory representations to the United States of its intent to continue its improved practices in the future. By that standard and based on the record in this case, the parties submit that the Commonwealth is in substantial compliance with the Consent Decree.

Third, the parties agree that an evidentiary hearing is not necessary because the United States does not oppose the termination of the Consent Decree. In furtherance of efficiency, the parties also agree that additional documents need not be filed to demonstrate substantial compliance.

## III. CONCLUSION

The parties agree that the Commonwealth has fulfilled its obligation under the Consent Decree. Based on the record of the case, the parties stipulate that the Commonwealth is in substantial compliance with the requirements of the Consent Decree. Accordingly, the parties respectfully move the Court to terminate Consent Decree.

RESPECTFULLY SUBMITTED this 27th day of January 2014.

**For the Commonwealth Defendants:**

/s/ Teresita J. Sablan
Teresita J. Sablan (T0089)
Assistant Attorney General

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**For the United States:**

JOCELYN SAMUELS
Acting Assistant Attorney General
United States Department of Justice
Civil Rights Division

By: /s/ Jeffrey R. Murray
JEFFREY R. MURRAY
Trial Attorney